KUHN, J.
12This appeal considers whether insurance coverage is provided under the terms of a commercial general liability (“CGL”) policy for a claim advanced by an “additional insured,” where coverage is afforded for “contractual liability” that is “assumed” in an “insured contract,” but coverage is excluded if “‘bodily injury’ or ‘property damage’ ” arise out of the use of an auto owned or operated by an insured under the “aircraft, auto or watercraft” exclusion. The trial court granted summary judgment in favor of defendant-appellee, Scottsdale Insurance Company (“Scottsdale”) and against cross-claimant, Cox Communications Louisiana, L.L.C. (“Cox”). We amend the judgment to expressly provide that Cox’s cross-claim against Scottsdale is dismissed and, as amended, we affirm the judgment.
I. PROCEDURAL AND FACTUAL BACKGROUND
As alleged in their petition, plaintiffs, Roosevelt McQuirter and John Hayes, were injured in an automobile accident that occurred on October 11, 2004. While the vehicle that plaintiffs occupied was stopped at an intersection controlled by a red light traffic signal, it was struck in the *78 rear by a vehicle driven by Robert Rotolo. In 2005, plaintiffs filed suit against defendants, Rotolo, MICOR Communications, Inc. (“Micor”), Scottsdale, and Cox Communications Louisiana, L.L.C. (“Cox”).[1] Plaintiffs alleged that their injuries were caused by the sole negligence or fault of Rotolo’s failure to stop, failure to maintain control, and his inattention. The petition further alleged that Rotolo was Micor’s agent and employee, who was acting in the course and scope of his employment when the ^accident occurred. Plaintiffs also alleged that Scottsdale had a CGL policy in favor of Micor that insured against Roto-lo’s negligent acts, and that Micor and Rotolo were acting as agents of Cox and within the course and scope of their employment with Cox.[2]
Micor answered the petition, generally denying plaintiffs’ claims, and filed its own motion for summary judgment, wherein Micor asserted that it had no liability for the alleged negligent conduct of Rotolo. Cox also answered the petition, denying most of plaintiffs’ allegations, but admitting those allegations that asserted Rotolo was in the course and scope of his employment with Micor when the accident occurred and that the Scottsdale policy insured Micor against the negligent acts of Rotolo.
In January 2010, Scottsdale filed a motion for summary judgment, wherein it asserted that the policy issued to Micor contained an “aircraft, auto or watercraft exclusion” (the “auto exclusion”) that precluded coverage for “‘bodily injury[5] or ‘property damage’ arising out of the ownership, maintenance, use ... of any ‘auto’ ... owned or operated by ... any insured.” Thus, Scottsdale maintained that the terms of the policy excluded coverage for plaintiffs’ injuries and sought a judgment that dismissed plaintiffs’ claims against it with prejudice. On July 19, 2010, the trial court granted. Scottsdale’s motion for summary judgment, ruling that the Scottsdale policy issued to Micor for the period August 5, 2004 to August 5, 2005, provided no coverage for the claims brought by plaintiffs “because such are precluded under the policy’s ... [a] uto [ejxclusion....”[3]
|4In June 2010, Cox filed a cross-claim against both Micor and Scottsdale, asserting that Cox was entitled to a defense and indemnity from Micor based on the terms of a December 15, 2003 installation and repair agreement. Pursuant to this agreement, Micor, as “contractor,” agreed to perform the “installation and/or repair of equipment for the reception of cable and telecommunications services” for Cox. Based on the indemnification provision of this agreement, Cox alleged that Micor owes a defense and indemnification to Cox for the claims asserted against it in the main demand.[4] Cox alleged that the *79 Scottsdale policy, which insured MICOR, as the “named insured,” and Cox, as an “additional insured” provided coverage for an “insured contract.”[5] Cox alleged that: 1) the installation and repair agreement qualified as an “insured contract” under the policy terms, and 2) coverage is provided to Cox under the “insured contract” exception from the “contractual liability” exclusion. Cox prayed for judgment in its favor against both Micor and Scottsdale “for defense and full indemnification,” including attorney fees and all court costs, together with legal interest from date of judicial demand until paid.
lfiIn response, Scottsdale filed a motion for summary judgment, seeking the dismissal of the claim asserted against it in Cox’s cross-claim. Scottsdale urged that the “auto exclusion” contained within its policy precluded coverage for Cox’s claim for defense and indemnification, because the alleged liability arose out of the use of an automobile by Rotolo, an “insured” under the policy based on the allegations of plaintiffs’ petition.
In its opposition memorandum, Cox contends that although plaintiffs’ claims may be excluded by the “auto exclusion,” Cox’s claims against Micor based on Cox’s “insured contract” are not excluded, and thus Scottsdale is liable to Cox for defense and indemnification.
Following a hearing on the matter, the trial court signed an October 15, 2010 judgment in favor of Scottsdale, which granted its motion for summary judgment seeking the dismissal of Cox’s cross-claim. The judgment further states, in pertinent part:
The claims brought by [Cox] are precluded by the application of the [“auto exclusion”] in the [CGL] insurance policy issued by [Scottsdale] to [Micor]. The underlying claims against [Cox] brought by [plaintiffs] specifically allege facts which, even if proven true, would result in liability that is specifically and unambiguously precluded by the [auto exclusion.]
... [T]he parties will bear their respective attorney’s fees and costs....
Cox has appealed, asserting that the trial court erred by interpreting the Scottsdale policy to exclude coverage for the claims asserted in its cross-claim against Micor.
I aII. ANALYSIS
The summary judgment procedure is expressly favored in the law and is designed to secure the just, speedy, and inexpensive determination of non-domestic civil actions. La. C.C.P. art. 966(A)(2). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, admissions, and affidavits in the record show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). A summary judgment may be rendered dispositive of a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties, even though granting of the summary judgment does not dispose of the entire case. La. C.C.P. art. 966(E); North American Treatment Systems, Inc. v. Scottsdale Ins. *80 Co., 05-0081, p. 19 (La.App. 1st Cir.08/23/06), 943 So.2d 429, 442-43, writs denied, 06-2918 & 06-2803 (La.2/16/07), 949 So.2d 423 & 424. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is “material” for summary judgment purposes can be seen only in light of the substantive law applicable to the case. Richard v. Hall, 03-1488, p. 5 (La.4/23/04), 874 So.2d 131, 137.
Our supreme court recently addressed the insurer’s duty to defend in Arceneaux v. Amstar Corp., 10-2329, p. 9 (La.7/1/11), 66 So.3d 438:
As explained in Yount v. Maisano, 627 So.2d 148, 153 (La.1993), “the insurer’s obligation to defend suits against its insured is broader than its liability for damage claims.” “The insurer’s duty to defend suits brought against its insured is determined by the allegations of the injured plaintiffs petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage.” “Thus, if assuming all the allegations of the petition to be true, there would be both (1) coverage under the policy and (2) liability to the plaintiff, the insurer must defend the insured regardless of the outcome of the suit.” The allegations of the petition are 17liberally construed to determine whether they set forth grounds which bring the claim within the insurer’s duty to defend. [Citations omitted.]
The issue of whether a liability insurer has the duty to defend a civil action against its insured is determined by application of the “eight-corners rule,” under which an insurer must look to the “four corners” of the plaintiffs petition and the “four corners” of its policy to determine whether it owes that duty. Henly v. Phillips Abita Lumber Co., 06-1856, p. 5 (La.App. 1st Cir.10/3/07), 971 So.2d 1104, 1109.
An insurance policy is an agreement between the parties and should be interpreted by using ordinary contract principles. Henly, 06-1856 at p. 4, 971 So.2d at 1108. Interpretation of a contract is the determination of the common intent of the parties. La. C.C. art. 2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. La. C.C. art. 2046. The words of a contract must be given their generally prevailing meaning. La. C.C. art. 2047. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. C.C. art. 2050.
An insurer has the burden of proving that a loss comes within a policy exclusion. Louisiana Maintenance Services, Inc. v. Certain Underwriters at Lloyd’s of London, 616 So.2d 1250, 1252 (La.1993). Additionally, exclusionary clauses in an insurance policy are strictly construed. Calogero v. Safeway Insurance Company of Louisiana, 99-1625, p. 6 (La.1/19/00), 753 So.2d 170, 173. This strict construction principle applies, however, only if the ambiguous |spolicy provision is susceptible to two or more reasonable interpretations; for the rule of strict construction to apply, the insurance policy must be not only susceptible to two or more interpretations, but each of the alternative interpretations must be reasonable. Sims v. Mulhearn Funeral Home, Inc., 07-0054, p. 9 (La.5/22/07), 956 So.2d 583, 590. If the wording of the policy is clear and expresses the parties’ intent, the policy must be enforced as written. This rule is applicable even to policy provisions that limit the insurer’s liability or place restrictions on policy obligations, unless the provision conflicts with statutes or public policy. Anderson v. State Farm Fire & Cas. *81 Ins. Co., 10-0036, p. 7 (La.App. 1st Cir.7/16/10), 42 So.3d 1140, 1145.
The determination of whether a contract is clear or ambiguous is a question of law. Moreover, when a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law and summary judgment is appropriate. Sims, 07-0054 at pp. 9-10, 956 So.2d at 590. An insurance policy, including its exclusions, should not be interpreted in an unreasonable or strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. North American Treatment Systems, Inc., 05-0081 at p. 20, 943 So.2d at 443. If the language in an insurance contract is clear and unambiguous, the agreement must be enforced as written. The court should not strain to find ambiguity where none exists. Ramho v. Walker, 97-2371, p. 5 (La.App. 1st Cir.11/6/98), 722 So.2d 86, 89, writ denied, 98-3030 (La.1/29/99), 736 So.2d 840.
loThe pertinent provisions of Scottsdale’s CGL policy provides coverage as follows:
SECTION 1 — COVERAGES
COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY
1. Insuring Agreement
a. We will pay those sums that the insured becomes legally obligated to pay as damages because of “bodily injury” or “property damage” to which this insurance applies. We will have the right and duty to defend the insured against any “suit” seeking those damages. However, we will have no duty to defend the insured against any ‘suit’ seeking damages for “bodily injury” or property damage’ to which this insurance does not apply. ...
[[Image here]]
2. Exclusions
This insurance does not apply to:
[[Image here]]
b. Contractual Liability
“Bodily injury” or “property damage” for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
[[Image here]]
(2) Assumed in a contract or agreement that is an “insured contract”, provided the “bodily injury” or “property damage” occurs subsequent to the execution of the contract or agreement ....
[[Image here]]
g. Aircraft, Auto Or Watercraft
“Bodily injury” or “property damage” arising out of the ownership, maintenance, use or entrustment to others of any aircraft, “auto” or watercraft owned or operated by or rented or [inloaned to any insured. Use includes operation and “loading or unloading”.
This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the “occurrence” which caused the “bodily injury” or “property damage” involved the ownership, maintenance, use or entrustment to others of any aircraft, “auto” or watercraft that is owned or operated by or rented or loaned to any insured.
This exclusion does not apply to:
*82 (1) A watercraft while ashore on premises you own or rent;
(2) A watercraft you do not own that is:
(a) Less than 26 feet long; and
(b) Not being used to carry person or property for a charge;
(3) Parking an “auto” on, or on the ways next to, premises you own or rent, provided the “auto” is not owned by or rented or loaned to you or the insured;
(4) Liability assumed under any “insured contract” for the ownership, maintenance or use of aircraft or watercraft; or
(5) “Bodily injury” or “property damage” arising out of the operation of ... [cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers] or [air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.].
[[Image here]]
SECTION II — WHO IS AN INSURED
1. If you are designated in the Declarations as:
[[Image here]]
d. An organization other than a partnership, joint venture or limited liability company, you are an insured....
[[Image here]]
2. Each of the following is also an insured:
lna. ... your “employees”....
According to the petition, Rotolo acted in the course and scope of his employment with Micor. Assuming this fact is true, Rotolo, as an employee of Micor, was “an insured” under the policy. Further, Cox and Scottsdale do not dispute that the accident at issue arose out of Rotolo’s “use” of a vehicle.[6] On appeal, Cox takes the position that “although plaintiffs’ claims may be excluded by the policy, Cox’s claims against MICOR are not [excluded], and thus Scottsdale is liable to Cox for defense and indemnification.” Cox urges that “the policy provides coverage for an ‘insured contract,’ excepting insured contracts from the contractual liability exclusion of the policy.” Cox asserts that the installation and repair agreement constitutes an “insured contract.” Alternatively, Cox argues that the Scottsdale policy is ambiguous, and that the policy language should be construed in its favor.
Scottsdale maintains on appeal that the exception providing coverage for “insured contracts” does not resurrect coverage for a claim that is not covered based on the auto exclusion. Scottsdale urges that the exception clearly applies only to the contractual liability exclusion, and the exception “does not ‘create’ coverage.”
Assuming that the contractual indemnity exclusion does not bar coverage in the instant case based on the terms of the installation and repair agreement, we conclude that the policy clearly excludes coverage for Cox’s claims based on the broad wording of the “auto exclusion.” Although Cox’s cross-claim seeks | ^indemnification from Scottsdale, the cross-claim arises out of the plaintiffs’ claims for injuries sustained in the October 2004 automobile accident. The automobile exclusion is unambiguous and operates to broadly bar coverage for bodily *83 injury or property damage “arising out of the ... use ... of any ... ‘auto’ ... operated by ... any insured.” Reading the policy as a whole, the contractual indemnity exclusion has no bearing on the interpretation or the application of the automobile liability exclusion. The policy is not made ambiguous simply because the contractual indemnity exclusion does not apply to the facts presented. The result is logical and equitable, as most exclusions from insurance policies are designed to eliminate risks which should be covered under other policies. William Shelby McKenzie and H. Alston Johnson, III, Louisiana Civil Law Treatise: Insurance Law and Practice, Vol. 15, § 188, p. 525 (3rd Ed.2006). The risk associated with the operation of automobiles is such a risk that was not intended to be covered by a CGL policy. The unambiguous exclusion imposes a reasonable limitation on the policy and must be given effect. See Supreme Services and Specialty Co., Inc. v. Sonny Greer, Inc., 06-1827, p. 6 (La.5/22/07), 958 So.2d 634, 639. The wording of the exception set forth in paragraph 4 of the auto exclusion additionally supports our conclusion that the parties intended to exclude coverage for bodily injury or property damages “arising out of the ... use ... of any ... ‘auto’ ... operated by ... any insured.” This exception provides that the auto exclusion does not apply to liability assumed under an “insured contract” for the use of an “aircraft” or a “watercraft.” Noticeably, this exception does not reference an “auto.”
| laThus, we conclude that Scottsdale met its burden of proving that the claims at issue fall within the auto exclusion. This exclusion does not conflict with any relevant statutes or public policy and, as such, it is enforceable. The trial court correctly determined that Scottsdale was entitled to judgment in its favor as a matter of law.
III. CONCLUSION
For these reasons, we affirm the trial court’s October 15, 2010 summary judgment in favor of Scottsdale and against Cox. We amend the judgment to expressly provide that Cox’s cross-claim against Scottsdale is dismissed and, as amended, we affirm the judgment. Appeal costs are assessed against Cox.
AMENDED AND, AS AMENDED, AFFIRMED.

. Scottsdale was initially identified as XYZ insurance Company and was later identified in an amending and supplemental petition. Cox was named as a defendant in plaintiffs' first supplemental and amending petition for damages.

. Plaintiffs alleged that the Scottsdale insurance policy inured to their benefit under Louisiana's Direct Action Statute, La. R.S. 22:1269.

. This judgment is not on review in this appeal.

.The "INDEMNITY” provision of this agreement states as follows, in pertinent part:
[Micor] shall indemnify, defend and hold harmless Cox ... from any and all claims, liabilities, demands, losses, costs ..., expenses and liabilities of any nature whatsoever in connection with or resulting from [Micor’s] or [Micor's] Personnel’s acts or omissions, the fulfillment of [Micor's] obligations ... and/or the breach of any Applicable Laws by [Micor] or its Personnel. [Micor] shall cooperate in the defense of any claims for which indemnification is *79 available and shall furnish such records, information, and testimony and attend such conferences, discovery, proceedings, hearings, trials, and appeals, as may be requested by Cox.

. The "additional insured" endorsement lists Cox in the “Schedule” as an "Additional Insured” organization, and further states, "WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule as an insured but only with respect to liability arising out of your operations.... ”

. Rotolo's alleged conduct of driving an automobile and colliding into the rear of the vehicle occupied by plaintiffs is essential to plaintiffs' theory of liability and the duty allegedly breached by him flows from his “use” of the automobile. Edwards v. Horstman, 96-1403, p. 7 (La.2/25/97), 687 So.2d 1007, 1012.