COX, J.
The defendant, Canopius U.S. Insurance ("Canopius"), appeals from a judgment for the plaintiff, Thomas Christopher Ilgenfritz ("Ilgenfritz"), finding that Canopius's denial of Ilgenfritz's claim was improper. The trial court found that the entrustment exclusion in the Canopius policy was inapplicable and awarded Ilgenfritz $40,177.11 for his loss, plus interest. For the following reasons, we respectfully reverse the ruling of the trial court.
FACTS
In the summer of 2012, Ilgenfritz met Chad Matrana ("Matrana") in Miramar Beach, Florida. Ilgenfritz was residing in Florida when he learned that his next door neighbor, Matrana, was an experienced chef and planned to move to Monroe, Louisiana, to open a restaurant by the name of Bacco. Matrana told Ilgenfritz he had come across a great opportunity on a lease for restaurant space at Washington Plaza in downtown Monroe. He asked Ilgenfritz to be an investor in Bacco. Ilgenfritz agreed and made a "handshake deal" with *1111 Matrana. According to Ilgenfritz, the parties' deal contemplated that he would serve as the investor and Matrana would serve as the chef and manager.
Matrana established Bacco Corporation, LLC, and served as its sole member, agent, and officer. Ilgenfritz invested in Bacco, purchasing between $50,000 and $100,000 worth of equipment and property to open the restaurant. Bacco opened with Matrana having full control over the restaurant's operations and finances.
At the time of Bacco's opening in Fall 2012, Ilgenfritz purchased a commercial insurance policy in the name of Bacco, LLC, with liability and contents or property coverage from Scottsdale.[1] Ilgenfritz obtained the insurance policy through his friend and insurance agent, Derek Canchola ("Canchola"). The Scottsdale policy provided $50,000 in coverage for the restaurant. Although Ilgenfritz obtained the policy, he entrusted Matrana to pay the premiums. After two or three months, however, Matrana stopped paying the premiums, and Scottsdale cancelled the policy on April 22, 2013.
On November 1, 2012, Matrana signed the Washington Plaza lease for the restaurant. Although he furnished his financial statement to the property manager, Stuart Scalia ("Scalia"), Ilgenfritz refused to sign the lease. Scalia informed Ilgenfritz that by refusing to sign the lease, he would have limited access to the building and would have to obtain Matrana's permission to enter the restaurant during off-hours.
In early 2013, Ilgenfritz began to suspect that the restaurant was suffering. He traveled to Monroe with a financial consultant to meet with Matrana. Ilgenfritz testified that he wanted a hand in operating the restaurant, but Matrana was opposed to the idea. This meeting began the downward spiral of Ilgenfritz and Matrana's relationship. Two days after the meeting, Matrana sent an email to Ilgenfritz highlighting his problems with Ilgenfritz's behavior. He offered Ilgenfritz the opportunity to remain a "silent investor" or to "sell out." Ilgenfritz refused to "sell out," and only spoke to Matrana once or twice after receiving the email.
Ilgenfritz later learned Matrana was using his credit card, without permission, to purchase food for the restaurant. Additionally, Matrana had issued a hot check to Ilgenfritz, prompting Ilgenfritz to report Matrana to the district attorney. Their relationship became so volatile that Matrana's attorney informed Ilgenfritz that Matrana would have him arrested if he entered the restaurant.
Ilgenfritz called Scalia on a few occasions to check the status of the restaurant, only to learn that Matrana was not paying the utility bills. He testified that he asked Scalia's permission to obtain his belongings from the restaurant. Scalia told Ilgenfritz she had no right to allow him into the restaurant to remove items without Matrana's consent, as he had not signed the lease.
Around June or July of 2013, Ilgenfritz learned Matrana and Bacco were being evicted from Washington Plaza. Concerned by the news, Ilgenfritz returned to Canchola on July 17, 2013, to request a new insurance policy to cover the property. Ilgenfritz informed Amber McLin ("McLin"), the assistant to his insurance agent, that the policy was to be in his name, not in Bacco's name. He purchased only insurance for purposes of his contents, not for liability. Ilgenfritz testified he requested $65,000 on the new policy. Canchola issued the Canopius policy, which is the policy at issue. The policy was backdated with an effective date of July 9, *1112 2013, roughly three weeks prior to Matrana's July 31, 2013 eviction.
One week before Matrana's eviction, Ilgenfritz flew to Indiana for two weeks to perform his obligation to the National Guard. During the first week of his trip, Washington Plaza evicted Matrana. Ilgenfritz learned of the eviction through a third party. On August 6, 2013, he learned from Scalia that Matrana had removed all items not owned by Washington Plaza from the restaurant. Ilgenfritz flew from Indiana to his home in South Louisiana the weekend of August 10, 2013.
On August 12, 2013, Ilgenfritz discovered the policy he purchased was only $50,000. He contacted his insurance agent who agreed to backdate the policy to the original date with a $65,000 limit, and he was required to pay an extra premium. On August 13, 2013, Ilgenfritz traveled to Monroe to inspect the building and to confirm for himself that his items had been stolen by Matrana. He reported the theft to the Monroe Police Department. He also reported the claim to his insurance agent two days later, reporting that the theft occurred on August 13, 2013.
The applicable portion of the Canopius policy, located in Part B of the "Causes of Loss-Special Form" section, contains the following entrustment exclusions:
2. We will not pay for loss or damage caused by or resulting from any of the following:
h. Dishonest or criminal act by you, any of your partners, members, officers, managers, employees (including leased employees), directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:
(1) Acting alone or in collusion with others; or
(2) Whether or not occurring during the hours of employment.
i. Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, devise or false pretense.
After investigating the matter, Canopius denied Ilgenfritz's claim. Ilgenfritz filed suit on November 12, 2014. On January 8, 2015, Canopius filed a motion for summary judgment. Arguments on the motion were heard on May 18, 2015, and the motion was denied on May 27, 2015. A bench trial was scheduled for August 12, 2016. On September 28, 2016, the trial court ruled in favor of Ilgenfritz, awarding $40,177.11 for his loss, plus legal interest from the date of judicial demand. Canopius appeals this judgment.
LAW
An appellate court should not set aside a trial court's factual finding absent manifest error. Richardson Wholesale, LLC v. Dix , 2016-0966 (La. App. 1 Cir. 2/17/17), 214 So.3d 880. Review of the trial court's finding is governed by a two-part test: (1) the appellate court must find from the record that there is a reasonable factual basis for the finding of the factfinder, and (2) the appellate court must further determine the record establishes the finding is not clearly wrong (manifestly erroneous). State, Dep't of Soc. Servs. v. Reed , 16-171 (La. App. 5 Cir. 7/27/16), 197 So.3d 817. If the trial court's finding is "reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse." Id.
The rules governing the interpretation of insurance policies are well settled. As a contract between the parties, an insurance policy should be construed using the general rules of interpretation set forth in the Louisiana Civil Code.
*1113 Holden Bus. Forms Co. v. Louisiana State Univ. Health Scis. Ctr.-Shreveport , 39,638 (La. App. 2 Cir. 7/8/05), 908 So.2d 86. If the wording is clear and unambiguous with regard to the parties' intent, the insurance policy must be enforced as written. Id. Whether the contract language is clear and unambiguous is a question of law. Id.
Words and phrases used in insurance policies are to be construed using their plain, ordinary, and generally prevailing meaning, unless the words have acquired a technical meaning. La. C. C. art. 2047 ; Vise v. Olivier House Prop. Mgmt., LLC , 2016-0741 (La. App. 4 Cir. 4/12/17), 216 So.3d 157. The policy should not be interpreted in an unreasonable, strained manner "so as to enlarge its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion." Id.
An insurer has the right to limit coverage as long as the limitations do not conflict with statutory provisions or public policy. Gonzales v. Geisler , 46,501 (La. App. 2 Cir. 9/21/11), 72 So.3d 992. An insurer has the burden of proving that a loss comes within a policy exclusion. McQuirter v. Rotolo , 2011-0188 (La. App. 1 Cir. 9/14/11), 77 So.3d 76.
Exclusionary clauses in an insurance policy are strictly construed. Id. However, this strict construction principle applies only if the ambiguous provision is susceptible to two or more reasonable interpretations. Kirby v. Ashford , 2015-1852 (La. App. 1 Cir. 12/22/16), 208 So.3d 932. Thus, "the insurance policy must be not only susceptible to two or more interpretations, but each of the alternative interpretations must be reasonable." Id. If, after applying the general rules of construction, an ambiguity remains, the ambiguous provision is to be construed against the insurer and in favor of coverage. Petrozziello v. Thermadyne Holdings Corp. , 2015-1525 (La. App. 1 Cir. 2/17/17), 211 So.3d 1199, writ denied , 2107-0473 (La. 5/12/17), 219 So.3d 1104. However, the court should not strain to find ambiguity where none exists. McQuirter, supra .
DISCUSSION
Canopius sets forth three assignments of error. First, it argues the trial court committed manifest error in finding the theft/entrustment exclusion in the insurance policy did not exclude Appellee's claim. In pertinent part, the entrustment exclusion states Canopius will not pay for loss or damage caused by or resulting from a dishonest or criminal act by anyone to whom you entrust the property for any purpose, acting alone or in collusion with others, or whether or not occurring during the hours of employment.
Entrust, as defined by Black's Law Dictionary , means "to give over to another something after a relation of confidence has been established. To deliver to another something in trust or to commit something to another with a certain confidence regarding his care, use or disposal of it." Anyone, as defined by the Merriam-Webster Dictionary , means "any person at all."
It is clear that Ilgenfritz entrusted the restaurant equipment, i.e. his property, to Matrana and that the loss was caused by Matrana's dishonest and/or criminal acts. Ilgenfritz purchased the equipment for Bacco's restaurant operations after talking to Matrana and making a list of what was needed. He entrusted Matrana with overseeing all restaurant operations, including access and control over the restaurant. He even allowed Matrana exclusive access to the checkbook. It is clear that a relation of confidence existed between the two parties, and Ilgenfritz delivered the property to Matrana with confidence regarding its care. Additionally, Ilgenfritz filed a police report for theft against Matrana. It is clear that the dishonest and/or criminal acts portion of the exclusion was also met.
Matrana had the exclusive right of access to the restaurant, as Ilgenfritz refused *1114 to sign the lease. Scalia, the building manager, informed Ilgenfritz that by failing to sign the lease, he would not have physical access to the restaurant except during working hours. When the building owner commenced the eviction proceedings, Matrana was given five days to vacate the premises. Upon doing so, he took all of the furnishings, supplies, equipment, etc., some of which belonged to Ilgenfritz. For some reason, Ilgenfritz expected Scalia to ensure the items he purchased for the restaurant were not taken, but Scalia testified she was not sure who owned which items.
Ilgenfritz argues that there was a break in entrustment because the property was transferred from Matrana to Scalia at the time of the loss because the locks were changed. However, in Dupre v. Western Assur. Co. , 112 So.2d 165 (La. App. 1 Cir. 1959), the court held a provision in the policy providing coverage for theft of automobiles, excluding from coverage theft by any person entrusted with either custody or possession of the automobile, was intended to exclude all such losses resulting from the acts of any person to whom physical custody of the automobile was initially entrusted, even though his legal right to continued physical detention ceased. Although this is an older case, the basic principles still apply. Matrana's physical detention may have ceased upon the changing of the locks, but he was initially entrusted with the property. Thus, there was no break in the entrustment.
Ilgenfritz failed to take the necessary steps to protect his personal property. He decided to invest in the restaurant after a "handshake deal" with Matrana, a man he barely knew. He stated he did not take any steps to look into Matrana's background or check his references. Ilgenfritz had ample education as well as a business by the name of Native Outdoor Solutions to know this venture was unlikely to succeed. In his deposition, he conceded that he had never been involved in the restaurant business, yet still failed to put anything in writing to protect his interests.
He also failed to sign his name to the lease after numerous suggestions to do so. There appear to have been many red flags along the way, such as Matrana failing to pay the insurance premiums and writing hot checks. Ilgenfritz had ample time and opportunities to secure his interest in the property, but failed to do so.
The language of the exclusion is not ambiguous or unclear in any manner. The language specifically states Canopius will not pay for loss or damage caused by or resulting from dishonest or criminal acts by you or anyone to whom you entrust the property for any purpose (emphasis added). The exclusion in the Canopius policy is applicable, and Canopius should not have to bear this loss.
Canopius' final two assignments of error argue the trial court committed manifest error in finding the insurance agreement was not voided due to misrepresentation and fraud perpetrated by the appellee, and the trial court committed manifest error in awarding the appellee $40,177.11. We will not address these assignments of error, as they are moot since we find the exclusion is applicable.
CONCLUSION
For the foregoing reasons, we respectfully reverse the ruling of the trial court finding in favor of Ilgenfritz. We find the policy exclusion applies, and Canopius is not responsible for the loss. Costs of this proceeding are assessed to the appellee, Thomas Ilgenfritz.
REVERSED.

Scottsdale is not a party to this suit.