Judgment rendered January 13, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 53,675-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

BARBARA RUDD                                    Plaintiff-Appellee

versus

BRUCE CARPENTER AND                             Defendants-Appellants
ONDRE CARPENTER,
HUSBAND AND WIFE, AND
THEIR LIABILITY INSURER,
AMERICAN NATIONAL
INSURANCE COMPANY

* * * * *

Appealed from the
Eighth Judicial District Court for the
Parish of Winn, Louisiana
Trial Court No. 45648

Honorable Jacque Derr, Judge

* * * * *

| | |
|---|---|
| DAVENPORT, FILES & KELLY, LLP<br>By: M. Shane Craighead<br>    Grant M. Tolbird | Counsel for Defendants-<br>Appellants, ANPAC<br>Louisiana Ins. Co. and<br>Agent Michelle Coleman |
| SOOTER & ASSOCIATES<br>By: Victor H. Sooter | Counsel for Plaintiff-<br>Appellee, Barbara Rudd |

FINE LEGAL SERVICES, L.L.C.
By:  Jeremy C. Cedars

Counsel for Defendants-Appellees (Cross Claim Plaintiffs), Bruce and Ondre Carpenter

VOORHIES & LABBE´
By:  Cyd Sheree Page

Counsel for Defendants-Appellees, (Liability Claim), Bruce and Ondre Carpenter

* * * * *

Before STEPHENS, BLEICH (*Pro Tempore*), and BODDIE (*Pro Tempore*), JJ.

**BLEICH, J. (*Pro Tempore*)**

The defendant, ANPAC Louisiana Insurance Company ("ANPAC"), appeals the trial court's ruling granting a motion for partial summary judgment in favor of the plaintiff, Barbara Rudd. The trial court determined that the ANPAC homeowners policy provision limiting the insurer's liability to $10,000 for injury caused by a dog not listed in the policy is unenforceable against the insured defendants, Ondrea and Bruce Carpenter. For the following reasons, we reverse in part, affirm in part and remand for further proceedings.

## FACTS

From 2003 through July 2016, Ondrea and Bruce Carpenter ("the Carpenters") resided in a house on Highway 84 in Winnfield. During that time, their homeowners insurance was provided by a policy issued by ANPAC. In July 2016, the Carpenters sold the house and bought a home on Sylvan Meadows Loop in Winnfield. Before the closing date, Bruce telephoned the Carpenters' insurance agent, Michelle Coleman, to obtain a price quote for homeowners insurance for their new home. Bruce later stated that he told Coleman at the time that the Carpenters would move into the new house after fencing for their dog was completed. The Carpenters had owned the dog, named Skylar, since 2012. On July 18, 2016, Coleman printed out the completed insurance application. The Carpenters were existing clients, so Coleman used information from earlier policy years to answer the questions on the application, which she mailed to Bruce for him to sign and return with a check for the premium. Coleman's files included copies of the application, signed "Bruce & Ondrea Carpenter," and the

premium check. In March 2017, the Carpenters received by mail a copy of the homeowners insurance policy for their new house.

The ANPAC policy contains a "Liability Exposures Declarations Page" stating that the policy "will be reduced to a maximum of $10,000 limit on liability coverage for dogs and equine animals that are not listed on this page." Under Section II, "Liability Coverages," the ANPAC policy provides that the "maximum limit of liability we will pay per occurrence for bodily injury or property damage caused by dogs . . . is $10,000[.]" No dog was listed on the declarations page of the ANPAC policy.

On April 21, 2017, the Carpenters' dog attacked Barbara Rudd in her yard, biting her face and right leg. As a result of this attack, Rudd suffered significant injuries which required emergency medical treatment and several surgical procedures. Rudd's past medical expenses exceed $150,000.

Subsequently, the plaintiff, Barbara Rudd, filed a petition for damages against the defendants, Bruce and Ondrea Carpenter and ANPAC. After discovery, plaintiff filed a motion for partial summary judgment alleging that the Carpenters were strictly liable for her injuries and that the ANPAC policy's liability limitation for damages caused by dogs was unenforceable. In response, ANPAC filed a motion for summary judgment raising as a defense the "drop-down" limitation of liability provision in the insurance policy.

After a hearing, the trial court determined that the policy provision limiting the insurer's liability for damage caused by a dog not listed in the policy was unenforceable. The trial court rendered judgment granting the plaintiff's motion for partial summary judgment regarding the liability limitation and exotic animal provisions of the insurance policy and denying

2

ANPAC's motion. ANPAC filed a writ application seeking review of the trial court's denial of its motion for summary judgment. This court converted ANPAC's writ application to a motion for appeal. ANPAC appeals the judgment.

## DISCUSSION

ANPAC contends the trial court erred in granting the plaintiff's motion for partial summary judgment. ANPAC argues that the trial court improperly weighed conflicting evidence to find that the Carpenters had informed the insurance agent that they owned a dog.

Appellate courts review summary judgments de novo, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. *Samaha v. Rau*, 2007-1726 (La. 2/26/08), 977 So.2d 880; *Argonaut Great Central Ins. Co. v. Hammett*, 44,308 (La. App. 2 Cir. 6/3/09), 13 So.3d 1209, *writ denied*, 2009-1491 (La. 10/2/09), 18 So.3d 122. Summary judgment shall be rendered if the motion, memorandum and supporting documents show there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). A fact is "material" if it potentially ensures or precludes recovery, affects a litigant's ultimate success or determines the outcome of the legal dispute. *Van v. Ferrell*, 45,977 (La. App. 2 Cir. 3/2/11), 58 So.3d 522. In ruling on a motion for summary judgment, the district court's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Hines v. Garrett*, 2004-0806 (La. 6/25/04), 876 So.2d 764.

An insurance policy is a contract between the parties and should be construed using the general rules of interpreting contracts set forth in the

3

Civil Code. *Sims v. Mulhearn Funeral Home, Inc.*, 2007-0054 (La. 5/22/07), 956 So.2d 583. The responsibility of the judiciary in interpreting insurance contracts is to determine the parties' common intent by examining the words of the contract itself. La. C.C. arts. 2045 and 2046; *Sims, supra.* Words and phrases in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. La. C.C. art. 2047; *Sims, supra.*; *Ilgenfritz v. Canopius U.S. Insurance*, 51,530 (La. App. 2 Cir. 8/9/17), 243 So.3d 1109.

Insurers are entitled to limit coverage as long as the limitations do not conflict with the statutory provisions or public policy. *Ilgenfritz, supra.* An insurer has the burden of proving that a loss comes within a policy exclusion. *Ilgenfritz, supra.*

In the present case, the parties submitted for summary judgment the depositions of Bruce Carpenter, Ondrea Carpenter and Michelle Coleman. In his deposition, Bruce testified that his interaction with Coleman was always by telephone and that he did not recall filling out the insurance application for the new house. Bruce stated that he did not remember seeing the application before the incident and he did not sign the form, but he did not deny that Coleman had mailed the form to him to sign and return. Bruce testified that he spoke with Coleman about insurance for the new house and told her they would move after a fence was put up so he could move the dog. Bruce stated that he "assumed" Coleman knew the Carpenters owned a dog at the time of the move because of their prior conversations with the agent indicating that they owned a dog. Bruce testified that he received the homeowners policy in the mail after moving into the new house, but he did not read the document.

4

Ondrea Carpenter testified in her deposition that before her back problems in 2015, she had taken care of insurance matters for the house. Ondrea stated that she did not know if she had seen the 2016 insurance application or if she had signed the form. However, Ondrea acknowledged that she "could very well" have signed "Bruce and Ondrea Carpenter" on the form. Ondrea testified that she did not know where the information on the application came from and if asked about having a dog, she would not have said no. Ondrea stated that she did not recall specifically telling Coleman about the dog other than one conversation on the phone when she was "griping" to the agent about cooking 10 pounds of chicken to put in the freezer for the dog. Ondrea testified that she did not recall the date of that conversation.

In her deposition, Michelle Coleman testified that she was working as an insurance agent with several hundred clients and had been an agent for ANPAC since 2006. Coleman stated that she had spoken with Bruce by telephone to give him the price quote for homeowners insurance coverage for the new house. Coleman testified that on July 18, 2016, she printed out the insurance application from her computer and mailed the form to Bruce for him to sign and return with a check for the insurance premium. Coleman stated that she did not recall specifically asking Bruce if he owned a dog when she was preparing the insurance application. Coleman explained that because the Carpenters were existing clients, the insurer's quoting system already contained information they had provided in previous years and she had selected the option to use all of their existing information to complete the 2016 insurance application. Coleman testified that she did not remember whether or not the Carpenters had told her that they owned a dog. Coleman

stated that she thought she would remember being told by the Carpenters that they were freezing 10 pounds of chicken for their dog, but she did not recall such a conversation. Coleman testified that the liability limitation regarding dogs took effect in May 2015 and that the Carpenters would have received notice of that change at the time of the 2016 renewal of their homeowners policy for the Highway 84 property.

The above testimony demonstrates that there is a factual dispute as to whether Coleman was aware that the Carpenters owned a dog based on their comments to the agent at various times before their move in 2016, under circumstances when they were not seeking homeowners insurance. Thus, the trial court erred in finding that the issue of the agent's knowledge of the dog was "unquestioned." To make such a finding, the trial court necessarily assessed the credibility of the witness testimony and such weighing of the evidence is not appropriate for the purpose of summary judgment analysis.

In their appellate briefs, Rudd and the Carpenters argue that the trial court correctly granted summary judgment finding the liability limitation was not enforceable because ANPAC did not produce evidence that the Carpenters had the intent to deceive by failing to disclose their dog on the insurance application. The appellees contend Coleman made an error in completing the insurance application and that her mistake is imputed to ANPAC and is not binding on the Carpenters.

No misrepresentation or warranty made in the negotiation of an insurance contract, by the insured or in his behalf, shall be deemed material or defeat or void the contract unless the misrepresentation is made with the intent to deceive. La. R.S. 22:860 (formerly R.S. 22:619). To deny coverage under Section 860, the insurer must show that the applicant's

6

statements were false, made with the intent to deceive and that the misrepresentation materially affected the risk assumed by the insurer. *Jones v. United Sav. Life Ins. Co.*, 486 So.2d 1110 (La. App. 2 Cir. 1986).

An insurance agent, in procuring and reducing to writing an insurance application, acts as the agent of the insurer. When an insurance agent fills out an application for insurance, his acts, representations and mistakes, if any, are those of the insurance company so that if the agent by mistake or omission inserts untrue answers to questions in the application, such representations bind the insurer and not the insured, provided the insured has no actual or implied knowledge thereof. *Harris v. Guaranty Life Ins. Co.*, 75 So.2d 227 (La. 1954); *Miller v. Preferred Life Ins. Co.*, 107 So.2d 323 (La. App. 2 Cir. 1958).

In this case, the record contains testimony indicating that the Carpenters received the insurance application incorrectly stating that they did not own a dog, that they received a copy of the homeowners insurance policy stating the limitation of liability for injury caused by a dog that was not listed in the policy, and that they mentioned the dog in two telephone conversations with Coleman.

Based on the evidence presented, genuine issues of fact exist as to whether the ANPAC insurance agent was aware of the insured's dog, whether the insured was reasonably ignorant of the incorrect information entered on the insurance application, and whether the insured should have known that the dog had been omitted from the insurance policy in light of his opportunity to review the 3-page insurance application and the homeowners policy provisions regarding the liability limitation.

7

The issue before the trial court is to determine which party in this situation is at fault for failing to have the dog listed in the insurance policy. In making such a fact-intensive determination, the trial court will be required to assess the credibility of the witnesses, weigh the evidence and consider the applicable law. Thus, the trial court erred in granting partial summary judgment in favor of Rudd with respect to the enforceability of the liability limitation. For the same reason, the trial court did not err in denying ANPAC's motion for summary judgment.

## CONCLUSION

For the foregoing reasons, that portion of the judgment granting the plaintiff's motion for partial summary judgment regarding the enforceability of the liability limitation is reversed. That portion of the judgment denying ANPAC's motion for summary judgment or declaratory judgment is affirmed. This matter is remanded for further proceedings. Costs of this appeal are assessed one-half to the appellee, Barbara Rudd, and one-half to the appellant, ANPAC.

**REVERSED IN PART; AFFIRMED IN PART; REMANDED FOR FURTHER PROCEEDINGS.**