Judgment rendered September 27, 2023.
Application for rehearing may be filed within the delay allowed by Art. 2166, La. C.C.P.

No. 55,136-CW

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

LEE MALLAHAN, III                                     Respondent

versus

ERICK GUEVARA, JANIS                                  Applicants
MERLOS, EGE PAINTING, LLC,
EGE GENERAL CONSTRUCTION
& HOME IMPROVEMENTS, LLC,
EVANSTON INSURANCE
COMPANY, HISCOX
INSURANCE COMPANY, INC.,
EMPLOYERS MUTUAL
CASUALTY CO., BEVERAGE
BUILDERS AND REMODELING,
LLC, ABC INSURANCE
COMPANY, AND XYZ
INSURANCE COMPANY

* * * * *

On Application for Writs from the
Twenty-Sixth Judicial District Court for the
Parish of Bossier, Louisiana
Trial Court No. 164,657A

Honorable Michael Owens Craig, Judge

* * * * *

LUNN IRION LAW FIRM, LLC              Counsel for Applicant,
By: James Alex Mijalis                Employers Mutual
    William Orie Hunter, III          Casualty Company

KITCHENS LAW FIRM, APLC                    Counsel for Respondent,
By: Graydon K. Kitchens, III               Lee Mallahan, III
    Richard R. Ray

DEGAN, BLANCHARD & NASH                     Counsel for Respondent,
By:  Janna Campbell Underhill               Hiscox Insurance
     Caroline E. Campagna                   Company, Inc.

EGE PAINTING, LLC                           In Proper Person and
                                            through its Agent,
                                            Janis Merlos

\* \* \* \* \*

Before PITMAN, STEPHENS, and ELLENDER, JJ.

**STEPHENS, J.**

The issue before this Court in this writ grant to docket is whether the trial court erred in denying a motion for summary judgment filed by Employers Mutual Casualty Company ("Employers Mutual"). For the reasons set forth below, we grant the writ, reverse the judgment of the trial court, and grant Employers Mutual's summary judgment, dismissing the claim filed by plaintiff, Lee Mallahan, III ("Mallahan"), against Employers Mutual.

## FACTS AND PROCEDURAL BACKGROUND

On June 1, 2020, Erick Guevara ("Guevara"), an employee of EGE Painting, LLC, drove his Chevy truck to Mallahan's home to perform home improvement work. Before Guevara entered Mallahan's circle driveway, Mallahan was standing in the driveway picking up worms from the pavement and throwing them into the grass. When Guevara pulled into the driveway, he struck Mallahan. According to Mallahan's petition, the pickup truck made "violent contact with Mr. Mallahan's body knocking him into the air and causing him to lose consciousness." Mallahan filed the petition on April 21, 2021, and named as defendants Guevara, EGE Painting, and various insurers, including Employers Mutual.

As the managing member and an employee of Tadpole, LLC ("Tadpole"), Mallahan alleged that Employers Mutual provided "insurance coverage, excess coverage, umbrella coverage, or other coverage" for Mallahan's damages. Employers Mutual issued two insurance policies to Tadpole: a commercial auto policy and a commercial umbrella policy.

On August 19, 2022, Employers Mutual filed a motion for summary judgment and urged no uninsured/underinsured ("UM") coverage existed for

Mallahan's injuries under the terms of the commercial auto policy or the commercial umbrella policy issued to Tadpole. Employers Mutual alleged that, even without a validly executed UM coverage rejection form, there was no statutory UM coverage provided to Mallahan because he did not qualify as an insured under either policy. In its motion, Employers Mutual asserted the following were material facts not in dispute:

(1) Mallahan was not using any automobile at the time he was struck by the pickup truck.
(2) At the time Mallahan was hit by the pickup truck, he was picking worms off his driveway and throwing them into the grass.
(3) Mallahan is a member of Tadpole, LLC.

In opposition to the motion for summary judgment, Mallahan did not object to the above material facts. Instead, he claimed the following two genuine issues of material fact existed:

(1) Mallahan denied that the signature on the rejection form was his.
(2) Mallahan argued that Employers Mutual had presented no evidence that he had authority to execute any such rejection forms on behalf of Tadpole, LLC.

Mallahan did not respond to the arguments set forth by Employers Mutual in its motion for summary judgment.

The trial court ordered the matter to be submitted on briefs with no hearing. On January 4, 2023, the trial court denied the motion for summary judgment, with the court opining, "[a]fter reviewing the record, this Court has determined that Plaintiff in [his] Opposition filed on September 22, 2022, raised genuine issues of material fact that are present in this matter." Employers Mutual filed notice of intent to seek supervisory writs on January 26, 2023. This Court granted the writ on March 29, 2023, and docketed the matter for briefing.

2

**DISCUSSION**

As its only assignment of error, Employers Mutual contends the trial court erred in denying its motion for summary judgment as the issue of coverage is solely a question of law. Employers Mutual urges that, because it made a showing that Mallahan was not an insured under the policies issued to Tadpole, Mallahan had the burden to show there was a genuine issue of material fact to preclude the granting of summary judgment. Employers Mutual contends Mallahan failed to carry his burden.

In response, Mallahan argues a victim who is a pedestrian does not have to be operating a vehicle at the time of injury for UM coverage to be effective. Mallahan asserts it is Employers Mutual's burden to prove the validity of any exclusionary clause and to prove that any rejection of UM coverage was knowing, intelligent, and made in writing. As Employers Mutual cannot meet its burden, Mallahan concludes there are issues of material fact in dispute precluding summary judgment on the issue.

A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. *Samaha v. Rau*, 07-1726 (La. 2/26/08), 977 So. 2d 880; *Driver Pipeline Co. v. Cadeville Gas Storage, LLC*, 49,375 (La. App. 2 Cir. 10/1/14), 150 So. 3d 492, *writ denied*, 14-2304 (La. 1/23/15), 159 So. 3d 1058. Summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by La. C.C.P. art. 969(A)(2). The procedure is favored and shall be construed to accomplish those ends. *Id*.

A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there is no genuine issue as

3

to material fact and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). If the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. La. C.C.P. art. 966(D)(1). The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. *Id.*

A genuine issue is one about which reasonable persons could disagree. *Suire v. Lafayette City-Parish Consol. Gov't.*, 04-1459, p. 11 (La. 4/12/05), 907 So. 2d 37,48, *citing Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512, p. 26 (La. 7/5/94), 639 So. 2d 730; *Franklin v. Dick*, 51,479 (La. App. 2 Cir. 6/21/17), 224 So. 3d 1130. In determining whether an issue is genuine, a court should not consider the merits, make credibility determinations, evaluate testimony, or weigh evidence. *Suire, supra*; *Chanler v. Jamestown Ins. Co.*, 51,320 (La. App. 2 Cir. 5/17/17), 223 So. 3d 614, *writ denied*, 17-01251 (La. 10/27/17), 228 So. 3d 1230.

A material fact is one that potentially ensures or precludes recovery, affects the ultimate success of the litigant, or determines the outcome of the dispute. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material for summary judgment purposes can be seen only in light of the substantive law applicable to the case. *Jackson v. City of New Orleans*, 12-2742, p. 6 (La.

1/28/14), 144 So. 3d 876; *Richard v. Hall*, 03-1488, p. 5 (La. 4/23/04), 874 So. 2d 131.

Appellate courts review motions for summary judgment *de novo*, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. *Leisure Recreation & Ent., Inc. v. First Guaranty Bank*, 21-00838 (La. 3/25/22), 339 So. 3d 508; *Peironnet v. Matador Res. Co.*, 12-2292 (La. 6/28/13), 144 So. 3d 791; *Elliott v. Continental Casualty Co.*, 06-1505 (La. 2/22/07), 949 So. 2d 1247; *Reynolds v. Select Properties, Ltd.*, 93-1480 (La. 4/11/94), 634 So. 2d 1180; *Davis v. Whitaker*, 53,850 (La. App. 2 Cir. 4/28/21), 315 So. 3d 979.

Summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded. *Elliott*, *supra*. An insurance policy is a contract between the parties and should be construed employing the general rules of interpretation of contracts set forth in the Louisiana Civil Code. *Green ex rel. Peterson v. Johnson*, 14-0292 (La. 10/15/14), 149 So. 3d 766; *Sims v. Mulhearn Funeral Home, Inc.*, 07-0054 (La. 5/22/07), 956 So. 2d 583. The parties' intent, as reflected by the words of the policy, determine the extent of coverage. Words and phrases used in a policy are to be construed using their plain, ordinary, and generally prevailing meaning, unless the words have acquired a technical meaning. La. C.C. art. 2047; *Peterson v. Schimek*, 98-1712 (La. 3/2/99) 729 So. 2d 1024; *Williams v. Financial Indem. Ins. Co.*, 54,324 (La. App. 2 Cir. 4/13/22), 337 So. 3d 600, *writ denied*, 22-00789 (La. 9/20/22), 346 So. 3d 280. An insurance policy should not be interpreted in an unreasonable or a

strained manner so as to enlarge or restrict its provisions beyond what is reasonably contemplated by its terms or to achieve an absurd conclusion. *Id.* Where the language in the policy is clear, unambiguous, and expressive of the intent of the parties, the agreement must be enforced as written. *Ilgenfritz v. Canopius U.S. Ins.*, 51,530 (La. App. 2 Cir. 8/9/17), 243 So. 3d 1109. However, if after applying the other rules of construction an ambiguity remains, the ambiguous provision is to be construed against the drafter and in favor of the insured. *Id*. at 1113.

Absent a conflict with statutory provisions or public policy, insurers are entitled to limit their liability and to impose reasonable conditions upon the obligations they contractually assume. *Landry v. Progressive Sec. Ins. Co.*, 21-00621 (La. 1/28/22), 347 So. 3d 712, *reh'g denied*, 21-00621 (La. 3/25/22), 338 So. 3d 1162. The purpose of liability insurance is to afford the insured protection from damage claims. *Green*, *supra*; *Ledbetter v. Concord General Corp.*, 95-0809 (La. 1/6/96), 665 So. 2d 1166.

The extent of coverage is determined from the intent of the parties as reflected by the words of the insurance policy. *Ledbetter*, *supra*. Exclusions in an insurance policy that conflict with statutes or public policy will not be enforced. *Landry, supra*; *Marcus v. Hanover Ins. Co.*, 98-2040 (La. 6/4/99), 740 So. 2d 603. The court's search for public policy governing automobile insurance policies must begin with the statutes enacted by the legislature. *Landry, supra*; *Sensebe v. Canal Indem. Co.*, 10-0703 (La. 1/28/11), 58 So. 3d 441.

When the existence of UM coverage under a policy of insurance is at issue, a two-step analysis is required. First, the automobile insurance policy is examined to determine whether UM coverage is contractually provided

under the express provisions of the policy. Next, if no UM coverage is found under the policy provisions, then the UM statute is applied to determine whether statutory coverage is mandated. *Higgins v. Louisiana Farm Bureau Cas. Ins. Co.*, 20-01094 (La. 3/24/21) 315 So. 3d 838; *Green*, *supra*; *Filipski v. Imperial Fire & Cas. Ins. Co.*, 09-1013 (La. 12/1/09), 25 So. 3d 742; *Succession of Fannaly v. Lafayette Ins. Co.*, 01-1355 (La. 1/15/02), 805 So. 2d 1134; *Magnon v. Collins*, 98-2822 (La. 7/7/99), 739 So. 2d 191; *Davis, supra*. As a result, we must first look at the UM coverage expressly provided in Tadpole's Employers Mutual policy to determine whether contractual UM coverage existed for Mallahan's injuries in the present case.

The commercial auto policy issued by Employers Mutual to Tadpole defines an insured as follows:

> **(1) You for any covered auto;**
> **(2) Anyone else while using with your permission, a covered auto you own, hire, or borrow, except:**
> > **….**
> > **a. …a partner or a member for a covered auto owned by him or her or a member of his household[.]**

The commercial umbrella policy issued by Employers Mutual to Tadpole defines an insured as follows:

> **Only with respect to liability arising out of ownership, maintenance, or use of covered autos:**
> **a. You are an insured.**
> **b. Anyone else while using with your permission a covered auto you own, hire, or borrow is also an insured except:**
> > **….**
> > **5. A partner or member for a covered auto owned by him, her, or a member of his/her household[.]**

The language provided in the commercial auto and commercial umbrella policies is clear, and interpretation beyond what is stated in the policies is unwarranted. Each policy intends to provide commercial liability

7

coverage for Tadpole's covered vehicles. Likewise, both policies contain exceptions for covered vehicles owned by Tadpole's members: if the member owns the covered vehicle being used, the member is not an insured. These exceptions likely exist because the owner of a vehicle should carry his own liability coverage on his personal vehicle. Furthermore, the policies clearly intend to provide liability coverage for persons actually using covered vehicles in the course and scope of their work for Tadpole.

For Mallahan to be an insured under the commercial auto policy, he must be using Tadpole's covered vehicle that Tadpole owned, hired, or borrowed with Tadpole's permission. The undisputed facts indicate that Mallahan was not using *any automobile* at the time of the accident. As a result, Mallahan is not entitled to UM benefits as he would not be considered an insured for purposes of Tadpole's Employers Mutual commercial auto policy.

Similarly, Mallahan is not an insured under Tadpole's Employers Mutual commercial umbrella policy. In order to be considered an insured under this policy, Mallahan must use, with permission, one of Tadpole's covered autos that he did not personally own. Tadpole's covered automobile not personally owned by Mallahan must also be covered under the commercial auto policy for the umbrella policy to provide coverage. Because no coverage existed under the commercial auto policy, no coverage exists under the commercial umbrella policy.

As Mallahan is not an insured under the contractual provisions of the Employers Mutual policy and does not qualify for UM coverage, the second step of the analysis requires application of the UM statute, La. R.S. 22:1295,

8

to determine whether statutory coverage is mandated. Louisiana Revised Statute 22:1295 provides in part:

> The following provisions shall govern the issuance of uninsured motorist coverage in this state:
>> (1)(a)(i) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle designed for use on public highways and required to be registered in this state or as provided in this Section unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover nonpunitive damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death resulting therefrom[.]

This court determined the express language of the statute requires automobile liability policies shall include UM coverage "for the protection of persons insured thereunder." *Wines v. Hollingsquest*, 54,605 (La. App. 2 Cir. 7/6/22), 343 So. 3d 332, *writ denied*, 22-01193 (La. 11/1/22), 349 So. 3d 7. Likewise, Louisiana jurisprudence is well settled: a person who does not qualify as a liability insured under a policy of insurance is not entitled to UM coverage under the policy. Therefore, if a person is not an insured under a liability policy, there is no requirement that UM coverage be provided to them. *Magnon v. Collins*, *supra*.

To determine whether UM coverage is mandated, the question is whether Mallahan qualifies as an insured under Tadpole's Employers Mutual policies. As we held previously, the policies are clear: Mallahan is not qualified as an insured; Tadpole is the named insured. Furthermore, Mallahan was not using a covered auto with Tadpole's permission when the accident occurred. In fact, no use of a vehicle was involved on Mallahan's

9

part. Instead, Mallahan was standing in his driveway throwing worms into the grass when Guevara's Chevy truck came into contact with Mallahan's person. Given these reasons, La. R.S. 22:1295 does not mandate UM coverage for Mallahan.

In its memorandum in support of summary judgment, Employers Mutual carried its burden by pointing out that, regardless of whether Mallahan signed the UM rejection form validly and with authority, he failed to qualify as an insured under the polices issued to Tadpole by Employers Mutual. The burden then shifted to Mallahan to establish the existence of a genuine issue of material fact that would preclude summary judgment or show that Employers Mutual is not entitled to judgment as a matter of law.

In response, Mallahan argued the validity of his alleged signature on the UM waiver form and that no evidence suggested that he had written authority to sign any alleged UM waiver for Tadpole. Mallahan failed to address arguments set forth in Employers Mutual's summary judgment motion as to whether he qualified as an "insured" under the terms of the auto and umbrella policies. Mallahan's arguments of signature validity and authority are neither relevant nor material. Mallahan failed to argue why he is insured and why UM coverage attached to him under the policies. As a result, Mallahan failed to establish a genuine issue of material fact or that Employers Mutual was not entitled to judgment as a matter of law.

Employers Mutual's policies clearly define who is considered an "insured" under the policies and who is entitled to UM coverage. A contrary interpretation of the policy language would be unreasonable. Consequently, the policies must be enforced as written. The trial court erred in implicitly finding otherwise.

**CONCLUSION**

For the reasons set forth above, we grant Employers Mutual's writ application, reverse the judgment of the trial court, and grant Employers Mutual's summary judgment motion, dismissing Mallahan's claims against Employers Mutual. Costs are assessed to plaintiff, Lee Mallahan, III.

**WRIT GRANTED; JUDGMENT REVERSED.**