McClendon, j.
lain this appeal, a defendant insurer appeals a judgment that granted summary judgment and sustained an exception of no right of action filed by a third-party defendant insurer. For the following reasons, we affirm the judgment of the trial court.
FACTUAL AND PROCEDURAL HISTORY
On September 15, 2000, Ducote Wrecking Company, L.L.C. (Ducote) executed a contract with Exide Technologies, Inc. (Exide) to provide maintenance services at Exide’s facility in East Baton Rouge Parish. The contract included a Hold Harmless and Indemnity Agreement, wherein Ducote agreed to defend and indemnify Exide from any act or omission, including negligence, on the part of Exide or Exide’s employees. On December 13, 2000, Kerry Kirby, an employee of Ducote, was performing maintenance services at Exide’s East Baton Rouge Parish facility when he was allegedly injured. Thereafter, on December 13, 2001, Mr. Kirby and Lori Kirby, individually and on behalf of their minor 'children, A.C. Kirby, Heidi Mayeaux, Kerry Kirby, Jr., and Hannah Kirby (the Kirbys), filed a Petition for Damages against Exide and Exide’s unnamed liability insurer. On April 4, 2002, Exide requested in writing that Ducote and Century Surety Company (Century), Ducote’s commercial general liability (CGL) insurer, provide a defense and hold it harmless from the liabilities asserted by the Kirbys. On April 22, 2002, Exide filed a notice of bankruptcy in the Kirby lawsuit.[1]
Thereafter, on November 25, 2009, the Kirbys filed a Second Supplemental and Amending Petition, naming XL Insurance America, Inc., formerly known as Wintert-hur International America Insurance Company (XL), as Exide’s liability insurer at the time of Mr. Kirby’s injuries. On March 24, 2011, XL sent a letter requesting that *935 Century undertake the defense of and agree to indemnify Exide and XL from and against all claims, causes, and expenses incurred in defense of the Kirbys’ lawsuit. On May 2, 2011, Century denied the request. On June 10, 2013, Exide filed another voluntary | ^petition for relief under the Bankruptcy Code, and the notice of automatic stay was filed in the Kirby lawsuit on January 13, 2014.[2]
Subsequently, on March 13, 2014, XL filed a Third Party Demand naming Du-cote and Century as third-party defendants and asserting that it was owed a defense and indemnity in this matter. XL also requested sanctions, penalties, costs and attorney fees, maintaining that Century’s denial for defense and indemnity was arbitrary, capricious, and without probable cause.
In response, Century filed a Motion for Summary Judgment and Exception of No Right of Action on December 16, 2014, asserting that Century’s insurance policy contained an Employer’s Liability Exclusion that excluded coverage for injuries to Ducote’s employees regardless of the source of Ducote’s liability. Thus, it asserted, regardless of whether Ducote was contractually hable to defend or indemnify Exide for damages arising out of Mr. Kirby’s injuries, the Employer’s Liability Exclusion applied to bar coverage. Alternatively, Century contended that it had no obligation to defend or indemnify Exide as an additional insured since Exide was not an additional insured under Century’s policy, and, as a matter of law, Century had no obligation to Ducote’s contractual indemni-tees because Century’s obligations were solely to its insureds. Century also alleged that XL, as Exide’s insurer, had no right to pursue a claim against Century for contractual indemnification under the Direct Action Statute. Lastly, Century requested that XL’s bad faith claims be dismissed.
XL filed an opposition again asserting that it was subrogated to the rights of Exide and that it had a right of action against Century in that capacity. It also claimed that the Employer’s Liability Exclusion contained in the Century policy did not preclude coverage for its claims against Century.
Following a hearing on March 30, 2015, the trial court took the matter under advisement and, on April 13, 2015, made a ruling in open court, granting Century’s motion for summary judgment and sustaining the exception of no right of action. The trial court signed a judgment to that effect on April 29, 2015, ordering that the claims | ¿asserted by XL, in its capacity as alleged subrogee to Exide, against Century be dismissed with prejudice. Century’s motion for new trial was denied by judgment signed on August 20, 2015, and XL insurance appealed.
In its appeal, XL assigns the following as error:
1. The trial court erred in granting Century’s Exception of No Right of Action. XL has a right of action against Century even though the Direct Action Statute is not the source of XL’s right of action against Century.
2. The trial court erred in granting Century’s Motion for Summary Judgment. The Employer’s Liability Exclusion contained in Century’s policy does not preclude coverage for XL’s claims against Century for the defense and indemnity of XL’s bank-rapt insured, Exide, by Century’s insured, Ducote. Century is bound by the terms of its policy for the liability of Ducote’s contractual indemnitees, and XL’s claims of *936 bad faith against Century are well-founded.
DISCUSSION
Initially, we address the rale to show cause order issued by this Court, ex pro-prio motu, on December 15, 2015, wherein we stated that upon examining the record in this matter, the April 29, 2015 judgment appeared to be a partial judgment without the required designation of finality required by LSA-C.C.P. art. 1915. We ordered the parties to show cause by briefs why the appeal should or should not be dismissed. The parties responded, and the rale to show cause was referred to the panel to which the appeal was assigned.
Both XL and Century assert that the trial court judgment dismissed all pending claims against Century and therefore the judgment is immediately appealable under LSA-C.C.P. art. 1915A. Citing Motorola, Inc. v. Associated Indem. Corp., 02-0716 (La.App. 1 Cir. 4/30/03), 867 So.2d 715, 721 (en banc), and Motorola, Inc. v. Associated Indem. Co., 02-1351 (La.App. 1 Cir. 10/22/03), 867 So.2d 723 (en banc), XL and Century each contend that the judgment requires no further designation as it dismisses Century in its entirety. Upon our review of the record, we agree and find the judgment is a partial final judgment under LSA-C.C.P. art. 1915A. There being no need for certification under Article 1915B, we maintain the appeal.
| ¿Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show there is no genuine issue as to material fact and that the movant is entitled to judgment as a matter of law. LSA-C.C.P. art. 966B(2); Tomaso v. Home Depot, U.S.A., Inc., 14-1467 (La.App. 1 Cir. 6/5/15), 174 So.3d 679, 681.[3] The burden of proof remains with the movant. LSA-C.C.P. art. 966C(2). However, if the mov-ant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require that he negate all essential elements of the adverse party’s claim, action, or defense. Instead, the movant must point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, the adverse party must produce factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If he fails to meet this burden, there is no genuine issue of material fact, and the movant is entitled to summary judgment. Id.
In determining whether summary judgment is appropriate, an appellate court reviews a trial court’s grant of summary judgment de novo, using the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate. An appellate court thus asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover-appellant is entitled to judgment as a matter of law. Janney v. Pearce, 09-2103 (La.App, 1 Cir. 5/7/10), 40 So.3d 285, 289, writ denied, 10-1356 (La. 9/24/10), 45 So.3d 1078.
Interpretation of an insurance policy usually involves a legal question that can be properly resolved in the framework *937 of a motion for summary judgment. Bonin v. Westport Ins. Corp., 05-0886 (La. 5/17/06), 930 So.2d 906, 910. An insurance policy is a contract between the parties and should be construed by using the general | firules of interpretation of contracts set forth in the Louisiana Civil Code. LeBlanc v. Aysenne, 05-0297 (La. 1/19/06), 921 So.2d 85, 89.
The Civil Code provides that interpretation of a contract is the determination of the common intent of the parties and when the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. LSA-C.C. arts. 2045 and 2046. Therefore, in interpreting an insurance policy, the words of the policy should be given their generally prevailing meaning, and words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract. LSA-C.C. arts. 2047 and 2048. Each provision of the policy must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole, and it must be interpreted to cover only those things it appears the parties intended to include. LSA-C.C. arts. 2050 and 2051; Ridenour ex rel. Ridenour v. Reed, 05-1849 (La.App. 1 Cir. 9/20/06), 944 So.2d 584, 586. Thus, when the meaning of the words is clear, the court should look no further in determining the intent of the parties. P.D. v. S.W.L., 07-2534 (La.App. 1 Cir. 7/21/08), 993 So.2d 240, 243, writ denied, 08-2770 (La. 2/13/09), 999 So.2d 1146. An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Ambiguity is to be resolved by construing the policy as a whole. Carrier v. Reliance Ins. Co., 99-2573 (La. 4/11/00), 759 So.2d 37, 43.
Ambiguous policy provisions are generally construed against the insurer and in favor of coverage. See LSA-C.C. art. 2056. Moreover, equivocal provisions seeking to narrow an insurer’s obligation are strictly construed against the insurer. Cadwallader v. Allstate Ins. Co., 02-1637 (La. 6/27/03), 848 So.2d 577, 580. However, this strict construction principle applies only if the ambiguous policy provision is susceptible to two or more reasonable interpretations. Thus, for the rule of strict construction to apply, the insurance policy must be not only susceptible to two or more interpretations, but each of the alternative interpretations must be reasonable. Cadwallader, 848 So.2d at 580.
RAn insurer has the burden of proving that a loss comes within a policy exclusion. North American Treatment Systems, Inc. v. Scottsdale Ins. Co., 05-0081 (La.App. 1 Cir. 8/23/06), 943 So.2d 429, 443, writs denied, 06-2918, 06-2803 (La. 2/16/07), 949 So.2d 424, 424. The determination of whether a contract is clear or ambiguous is a question of law. Cadwallader, 848 So.2d at 580. A summary judgment declaring a lack of coverage under an insurance policy may be rendered when there is no reasonable interpretation of the policy, when applied to the undisputed facts shown by the evidence supporting the motion, under which coverage could be afforded. P.D., 993 So.2d at 243-44.
In this matter, it is uncontroverted that at the time of Mr. Kirby’s accident, Ducote was the only named insured in Century’s CGL policy, in effect for the period from July 21, 2000 to July 21, 2001.[4] It is also *938 undisputed that Mr. Kirby was Ducote’s employee at the time of the accident. Century contends that the following provisions of its policy exclude coverage herein:
COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY
1. Insuring Agreement.
a. We will pay those sums that the insured becomes legally obligated to pay as damages because of “bodily injury” ... to which this insurance applies. We will have the right and duty to defend any “suit” seeking those damages. However, we will have no duty to defend the insured against any “suit” seeking damages for “bodily injury” ... to which this insurance does not apply-
⅜ * *
2. Exclusions.
This insurance does not apply to:
[[Image here]]
e. Employer’s Liability
“Bodily injury” to:
ls(l) An “employee” of any insured arising out of in the course of:
(a) Employment by any insured; or
(b) Performing duties related to the conduct of the insured’s business;
[[Image here]]
This exclusion applies:
(1) Whether the insured may be liable as an employer or in any other capacity; and
(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.
Century maintains that the Employer’s Liability Exclusion clearly and plainly does not provide coverage for the claims asserted and that, particularly, the Employer’s Liability Exclusion excludes coverage for XL’s claims against it arising out of injuries to Mr. Kirby, Ducote’s employee. On the other hand, XL argues that the Employer’s Liability Exclusion failed to specifically address whether it applied to liability assumed under an insured contract, making it ambiguous. XL asserts that this ambiguity is based on the “insured contract” exception to the Contractual Liability Exclusion, which provides:
2. Exclusions.
This insurance does not apply to:
[[Image here]]
b. Contractual Liability
“Bodily injury” ... for which the insured is obligated to pay damages;
(1) By reason of the assumption of liability in a contract or agreement.
⅜ ⅜ ‡
This exclusion does not apply to liability for damages:
(a) That the insured would have in the absence of the contract or agreement; or
(b) Assumed in a contract or agreement that is an “insured contract,” provided the “bodily injury” ... occurs subsequent to *939 the execution of the contract or agreement.
19Under the “Definitions” section of the policy, an “[i]nsured contract” included:
f. That part of any other contract or agreement pertaining to your business ... under which you assume the tort liability of another party to pay for “bodily injury” ... to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.
According to XL, it has a claim against Century as the conventional subrogee of its bankrupt insured, Exide. It argues that the Hold Harmless Agreement between Exide and Ducote meets the definition of an “insured contract” under the Century policy and, as a result, Century’s Contractual Liability Exclusion did not bar coverage for XL’s claims. It asserts that Century’s Employer’s Liability Exclusion, in failing to address liability assumed under an insured contract, is ambiguous as a matter of law requiring interpretation in favor of covei’age for XL’s claims.
At the outset, we recognize that an exception to an exclusion cannot be the basis for an inclusion within policy coverage. See Carrier v. Reliance Ins. Co., 759 So.2d at 40; Magnon v. Collins, 98-2822 (La. 7/7/99), 739 So.2d 191, 198. See also McKenzie & Johnson, Insurance Law and Practice, § 1:4, in 15 Louisiana Civil Law Treatise 9-10 (4th ed. 2012) (“An exception to an exclusion ... cannot be the basis of coverage for a person who is not an insured under the policy or for a person who is clearly excluded from coverage by other policy provisions.”). However, regardless of the interpretation of the Contractual Liability Exclusion herein, we find that the Employer’s Liability Exclusion is only subject to one reasonable interpretation. Further, the inapplicability of one exclusion does not necessarily negate the applicability of another distinct exclusion in the policy-
Looking at the plain language of the policy, the Employer’s Liability Exclusion applies not only when the insured, Ducote, is liable as an employer, but also when Ducote is liable “in any other capacity,” which would include Ducote’s capacity as an alleged contractual indemnitor of Exide. Further, the unambiguous language of the exclusion provides that it applies to “any obligation to share damages with or repay someone else who must pay damages” in connection with an employee’s injuries. Moreover, similar exclusions have been found to be clear and unambiguous. In Burrows v. Executive Property Management Co., 13-0914 (La.App. 4 Cir. 3/12/14), 137 So.3d 698, 704, the fourth circuit noted that cases, which have considered the exclusion at issue, have consistently found said exclusion to be clear and unambiguous. See also Vargas v. Daniell Battery Mfg. Co., Inc., 93-2282 (La.App. 1 Cir. 12/29/94), 648 So.2d 1103, 1107. Likewise, we find no ambiguity in the Employer’s Liability Exclusion.[5]
Accordingly, we conclude that the Employer’s Liability Exclusion operates to bar XL’s claims against Century. Because we have concluded that XL’s claims are excluded by the Employer’s Liability Exclusion, we need not address whether XL has a right of action against Century.
CONCLUSION
For the foregoing reasons, we affirm the summary judgment of the trial court. *940 Costs of this appeal are assessed against XL Insurance America, Inc.
AFFIRMED.

. Exide filed a voluntary petition for relief under Chapter 11 in the United States Bankruptcy Court for the District of Delaware, Case No. 02-11125.

. Exide’s second bankruptcy filing under Chapter 11 was in the United States Bankruptcy Court for the District of Delaware, Case No. 13-11482.

. The summary judgment law was recently amended by 2015 La. Acts, No. 422, but the provisions of Act 422 do "not apply to any motion for summary judgment pending adjudication or appeal on [January 1, 2016],”

. CGL policies are designed to protect the insured against losses to third parties that *938 arise out of the insured’s business operations. CGL policies typically exclude from coverage personal injuries to employees. The primary purpose of an employee exclusion clause is to draw a sharp line between employees and members of the general public. Roundtree v. New Orleans Aviation Bd., 04-0702 (La.App. 4 Cir. 2/4/05), 896 So.2d 1078, 1087. See also Burrows v. Executive Property Management Co., 13-0914 (La.App. 4 Cir. 3/12/14), 137 So.3d 698, 704.

. In support of its argument, XL refers to the federal decision in Hardy v. Ducote, 02-1520, 04-0789 (W.D. La. 5/4/07). To the extent that said decision conflicts with our opinion, we do not find it to be binding.