# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

# 2021 CA 1009

## BRANDY BOUDREAUX

## VERSUS

## MARY P. COCO AND PROGRESSIVE PALOVERDE INSURANCE COMPANY

**Judgment Rendered:** APR 2 8 2022

\* \* \* \* \* \*

On Appeal from the Twenty-Third Judicial District Court
In and for the Parish of Ascension
State of Louisiana
Docket No. 121,865

Honorable Katherine Stromberg, Judge Presiding

\* \* \* \* \* \*

| | |
|---|---|
| Steve Adams<br>Baton Rouge, LA | Counsel for Plaintiff/Appellant<br>Brandy Boudreaux |
| Ian A. MacDonald<br>Lafayette, LA | Counsel for Defendant/Appellee<br>Progressive Paloverde Insurance<br>Company |
| William C. Helm<br>Baton Rouge, LA | Counsel for Defendant/Appellee<br>Mary P. Coco |

\* \* \* \* \* \*

BEFORE: McCLENDON, WELCH, AND THERIOT, JJ.

Welch, J. concurs without reasons

**McClendon, J.**

In this personal injury suit, the plaintiff appeals the trial court's judgment granting summary judgment in favor of the defendant and dismissing her claims with prejudice. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

On May 2, 2017, Brandy Boudreaux[1] was a passenger in a vehicle driven by her mother, Mary Coco, when Ms. Coco's vehicle collided with the rear end of another vehicle. Ms. Boudreaux filed a petition for damages on April 26, 2018, naming as defendants Ms. Coco and her liability insurer, Progressive Paloverde Insurance Company (Progressive). The petition asserted that Ms. Coco was at fault in causing the collision by rear-ending the other vehicle and that Ms. Boudreaux sustained damages as a result of the collision.

Progressive answered Ms. Boudreaux's petition on June 20, 2018. Progressive generally denied the petition's allegations and its liability and specifically pled as an affirmative defense that the policy of liability insurance Progressive issued to Ms. Coco (the policy) excluded coverage for Ms. Boudreaux's claims, because she was an employee of Ms. Coco at the time of the accident. On December 26, 2018, Ms. Coco also answered the petition with a general denial of the petition's allegations and her liability.

On July 8, 2019, following discovery, Progressive filed a motion for summary judgment seeking dismissal of Ms. Boudreaux's claims.[2] Progressive maintained that the policy excluded coverage for an employer's liability arising out of or within the course of the employee's employment with the insured, or while performing duties related to the conduct of any insured's business (the employer's liability exclusion). Contending that Ms. Boudreaux was an employee of Ms. Coco and was within the course and scope of her employment with Ms. Coco at the time the accident occurred, Progressive asserted that the employer's liability exclusion applied to Ms. Boudreaux's claims. In support of its motion for summary judgment, Progressive submitted Ms. Boudreaux's responses to

---

[1] We note that Ms. Boudreaux testified she resumed use of her maiden name, Ortego, in approximately October of 2018, after the accident and institution of this suit.

[2] Progressive had previously filed a motion for summary judgment on January 22, 2019, which was set for hearing on March 29, 2019. A minute entry reflects that Progressive passed the motion for summary judgment set for hearing on that date.

2

requests for admission, a certified copy of Progressive's policy issued to Ms. Coco, Ms. Boudreaux's petition, and the deposition testimony of Ms. Boudreaux and Ms. Coco.

Ms. Boudreaux opposed Progressive's motion for summary judgment. Ms. Boudreaux argued that the employer's liability exclusion did not apply to her claims because she was working with Ms. Coco as an independent contractor, not an employee, at the time of the accident. In support of her opposition, Ms. Boudreaux submitted her deposition transcript and Ms. Coco's deposition transcript.

Progressive's motion for summary judgment was heard on August 22, 2019. Following oral argument, the trial court took the matter under advisement. The trial court executed a written judgment granting summary judgment in favor of Progressive. Ms. Boudreaux has appealed the trial court's judgment.[3]

## SUMMARY JUDGMENT

In determining whether summary judgment is appropriate, appellate courts review evidence *de novo* under the same criteria that governs the trial court's determination of whether summary judgment is appropriate. **Shoemake v. Scott**, 2019-1261 (La.App. 1 Cir. 8/3/20), 310 So.3d 191, 194. That is, after an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(A)(3).

On a motion for summary judgment, the burden of proof rests with the mover. LSA-C.C.P. art. 966(D)(1). If the mover will bear the burden of proof at trial on the issue before the court in the motion for summary judgment, the burden of showing there is no genuine issue of material fact remains with the mover. When the mover makes a *prima facie* showing that the motion should be granted, the burden then shifts to the non-moving party to present factual support, through the use of proper documentary evidence attached to its opposition, which establishes the existence of a genuine issue of

---

[3] On September 4, 2019, the trial court executed a written judgment and reasons for judgment granting summary judgment in favor of Progressive. Ms. Boudreaux appealed the September 4, 2019 judgment; however, this Court dismissed Ms. Boudreaux's appeal for lack of decretal language. See **Boudreaux v. Coco**, 2020-0042 (La.App. 1 Cir. 4/28/2020) (unpublished action). Thereafter, the trial court executed a second written judgment granting Progressive's motion for summary judgment and dismissing Ms. Boudreaux's claims on June 18, 2021. Ms. Boudreaux has now appealed the June 18, 2021 judgment.

material fact or that the mover is not entitled to judgment as a matter of law. LSA-C.C.P. art. 966(D)(1); **June Medical Services, LLC v. Louisiana Department of Health,** 2019-0191 (La.App. 1 Cir. 3/4/20), 302 So.3d 1161, 1164. If the adverse party fails to do so, there is no genuine issue of material fact and summary judgment will be granted. **McCoy v. Manor**, 2018-1228 (La.App. 1 Cir. 5/9/19), 277 So.3d 344, 348.

A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. **Marks v. Schultz**, 2020-0197 (La.App. 1 Cir. 12/10/20), 316 So.3d 534, 538. Material facts are those that potentially insure or preclude recovery, affect the litigant's success, or determine the outcome of a legal dispute. **Jenkins v. Hernandez**, 2019-0874 (La.App. 1 Cir. 6/3/20), 305 So.3d 365, 371, writ denied, 2020-00835 (La. 10/20/20), 303 So.3d 315. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. **Galliano v. CB & I, LLC**, 2018-0844 (La.App. 1 Cir. 4/10/19), 275 So.3d 906, 909.

## INSURANCE COVERAGE

Whether an insurance policy, as a matter of law, provides or precludes coverage is a dispute that can be properly resolved within the framework of a motion for summary judgment. **George S. May International Co. v. Arrowpoint Capital Corp.**, 2011-1865 (La.App. 1 Cir. 8/10/12), 97 So.3d 1167, 1171. An insurance policy is a contract between the parties and should be construed using the general rules of contractual interpretation. **Hinchcliffe v. Siaotong**, 2017-1356 (La.App. 1 Cir. 4/18/18), --- So.3d ---, ---, 2018 WL 1870159, at *2, writ denied, 2018-1113 (La. 10/15/18), 253 So.3d 1304. Interpretation of a contract is the determination of the common intent of the parties. LSA-C.C. art. 2045. When the words of an insurance contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent and courts must enforce the contract as written. LSA-C.C. art. 2046; **Sensebe v. Canal Indemnity Co.**, 2010-0703 (La. 1/28/11), 58 So.3d 441, 446.

When determining whether a policy affords coverage for an incident, the insured bears the burden of proving the incident falls within the policy's terms. **Miller v.**

4

**Superior Shipyard and Fabrication, Inc.**, 2001-2683 (La.App. 1 Cir. 11/8/02), 836 So.2d 200, 203. However, an insurer seeking to avoid coverage through summary judgment bears the burden of proving that a loss falls within a policy exclusion, such that application of the exclusion precludes coverage. **Savoie v. Anco Insulations, Inc.**, 2020-0584 (La.App. 1 Cir. 4/9/21), 322 So.3d 1264, 1266.

Additionally, because the purpose of liability insurance is to afford the insured protection from damage claims, policies should be construed to effect, not to deny, coverage. A provision which seeks to narrow the insurer's obligation is therefore strictly construed against the insurer. **Myers v. Welch**, 2017-0063 (La.App. 1 Cir. 10/25/17), 233 So.3d 49, 55, writ denied, 2017-2165 (La. 3/9/18), 238 So.3d 454. Any ambiguity in the exclusion is construed in favor of the insured. Nonetheless, an insurance policy, including its exclusions, should not be interpreted in an unreasonable or strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. **Savoie**, 322 So.3d at 1266-67.

Subject to the above rules of interpretation, insurance companies have the right to limit coverage in any manner they desire, so long as the limitations do not conflict with statutory provisions or public policy.[4] **Myers**, 233 So.3d at 55. A summary judgment declaring a lack of coverage under an insurance policy may be rendered when there is no reasonable interpretation of the policy, when applied to the undisputed facts shown

---

[4] We note that Ms. Boudreaux argues on appeal that the trial court erred in applying the employer's liability exclusion, because the exclusion is contrary to Louisiana law and public policy. However, Ms. Boudreaux raised this issue for the first time on appeal. As a general rule, appellate courts may not address issues raised for the first time on appeal; rather, we address only those issues previously presented by the parties and considered by the trial court. **Jackson v. Home Depot, Inc.**, 2004-1653 (La.App. 1 Cir. 6/10/05), 906 So.2d 721, 725.

To the extent one might argue that Progressive's motion for summary judgment implicitly raised the issue of public policy by relying on **Spain v. Travelers Ins. Co.**, 332 So.2d 827, 830 (La. 1976), for the proposition that exclusions such as the one at issue are enforceable even when the injured employee is not entitled to workers' compensation benefits, we still cannot say that Ms. Boudreaux raised the issue of public policy to the trial court. In response to Progressive's reliance on **Spain**, Ms. Boudreaux's opposition to the motion for summary judgment disputed Progressive's interpretation of **Spain** and distinguished **Spain** from the instant case, but did not present arguments regarding the issue of whether the employer's liability exclusion violates Louisiana public policy. Accordingly, we do not consider this issue on appeal.

We further note that this Court recently found that the same employer's liability exclusion did not conflict with statutory provisions or violate public policy in **Hinchcliffe**, --- So.3d at ---, 2018 WL 170159, at *3-4, where the injured party received workers' compensation benefits. However, **Hinchcliffe** did not address whether the exclusion would violate public policy if workers' compensation benefits had not been available.

5

by the evidence supporting the motion, under which coverage could be afforded. **Kirby v. Ashford**, 2015-1852 (La.App. 1 Cir. 12/22/16), 208 So.3d 932, 937.

**THE PROGRESSIVE POLICY**

Progressive's motion for summary judgment contends that the following provisions of its policy, referred to herein as the employer's liability exclusion, clearly and plainly exclude Ms. Boudreaux's claims from coverage:

> Coverage under [**PART I – LIABILITY TO OTHERS**]... does not apply to:
>
> ***
>
> **5. Employee Indemnification and Employer's Liability Bodily [I]njury** to:
>
> a. An employee of any **insured** arising out of or within the course of:
>
> (i) That employee's employment by any **insured**; or
>
> (ii) Performing duties related to the conduct of any **insured's** business; or
>
> b. The spouse, child, parent, brother or sister of that employee as a consequence of Paragraph a. above.

In response, Ms. Boudreaux asserts that she was an independent contractor, rather than an employee, and therefore not excluded from coverage for her injuries under the policy. Thus, the central issue in this appeal is the nature of the relationship between Ms. Boudreaux and Ms. Coco.

**THE EMPLOYER-EMPLOYEE RELATIONSHIP**

The distinction between an employee and an independent contractor status is a factual determination to be decided on a case-by-case basis. **Tower Credit, Inc. v. Carpenter**, 2001-2875, (La. 9/4/02), 825 So.2d 1125, 1129. The Louisiana Supreme Court recently set forth the following summary of law on this issue[5] in **Bolden v. Tisdale**, 2021-00224 (La. 1/28/22), --- So. 3d ---, ---, 2022 WL 262976, at *6:

> The single most important factor to consider in deciding whether the employer-employee relationship exists, for purposes of La. C.C. art. 2320, is the right of the employer to control the work of the employee. **Roberts v. State, Through the Louisiana Health and Human Resources Administration**, 404 So.2d 1221, 1225 (La. 1981) (citing **Hickman v. Southern Pacific Transport Company**, 262 La. 102, 262 So.2d 385 (1972), and **Blanchard v. Ogima**, 253 La. 34, 215 So.2d 902 (1968)). In

---

[5] While **Bolden** discussed this issue within the context of LSA-C.C. art. 2320, we recently applied the analysis set forth in **Hickman** in **Ellis v. Circle L Trucking, L.L.C.**, 2021-0457 (La.App. 1 Cir. 12/30/21), --- So.3d ---, ---, 2021 WL 6329796, at *4-6, within the same context as the present case – that is, considering the nature of the relationship between two parties for the purpose of determining whether an insurance exclusion applied.

**Blanchard**, this court stated: "It is the right of control of the time and physical activities in the other party and the existence of a close relationship between the parties which determine that one is a servant." **Id.**, 253 La. at 44, 215 So.2d at 905. This court further stated: " 'Servant' must be interpreted as that particular kind of agent who has a very close economic relation to, and is subject to very close control by, the principal. A servant is one who offers his personal services for a price. He is an integral part of his employer's business and must submit to the control of his physical conduct as well as of his time." **Id.**, 253 La. at 47, 215 So.2d at 906. The four primary evidentiary factors considered in deciding whether such an employer-employee relationship exists relate to whether the alleged employer has the right or duty, relative to the employee, of: (1) selection and engagement; (2) payment of wages; (3) power of dismissal; and (4) power of control. **Hillman v. Comm-Care, Inc.**, 01-1140, p. 8 (La. 1/15/02), 805 So.2d 1157, 1162. However, no one factor is controlling; rather, the totality of the circumstances must be considered, and the burden of proof is on the party seeking to establish an employer-employee relationship. **Hillman**, 01-1140 at pp. 8-9, 805 So.2d at 1163.

In contrast to the employer-employee relationship, the status of an independent contractor connotes a freedom of action and choice with respect to the undertaking in question and a legal responsibility on the part of the contractor in case the agreement is not fulfilled in accordance with its covenants. **Hickman v. Southern Pacific Transport Company**, 262 La. 102, 117, 262 So.2d 385, 390 (1972). An independent contractor relationship presupposes a contract between the parties, the independent nature of the contractor's business, and the nonexclusive means the contractor may employ in accomplishing the work. **Id.** Moreover, it should appear that the contract calls for specific piecework as a unit to be done according to the independent contractor's own methods, without being subject to the control and direction, in the performance of the service, of his employer, except as to the result of the services to be rendered. **Id.** It must also appear that a specific price for the overall undertaking is agreed upon; that its duration is for a specific time and not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach. **Id.**, 262 La. at 117, 262 So.2d at 390-91. The law further recognizes the inquiry to determine whether a relationship is that of independent contractor or that of a servant/employee requires, among other factors, the application of the principal test: the control over the work reserved by the employer. **Id.**, 262 La. at 117, 262 So.2d at 391. In applying this test it is not the supervision and control which is actually exercised which is significant; the important question is whether, from the nature of the relationship, the right to do so exists. **Id.**, 262 La. at 117-18, 262 So.2d at 391.

**Bolden**, --- So. 3d at ---, 2022 WL 262976 at *6.

A court should consider the totality of the circumstances in deciding whether an employer-employee relationship exists or whether it is an instance where the individual has independent contractor status. **Fonseca v. City Air of Louisiana, LLC**, 2015-1848 (La.App. 1 Cir. 6/3/16), 196 So.3d 82, 87.

7

## DISCUSSION

As set forth above, Progressive sought summary judgment on the basis that the employer's liability exclusion applies and precludes coverage for Ms. Boudreaux's claims. Accordingly, Progressive bore the burden of proof both as the moving party seeking summary judgment and as the insurer seeking to avoid coverage through summary judgment. See **Savoie**, 322 So.3d at 1266. Thus, the initial question before this Court, in reviewing the summary judgment, is whether Progressive established that the employer's liability exclusion contained in the policy applies to the facts presented herein and excludes coverage for Ms. Boudreaux's claims. If Progressive made a *prima facie* showing that its motion should be granted, the burden then shifted to Ms. Boudreaux to produce factual support sufficient to establish the existence of a genuine issue of material fact or that Progressive was not entitled to judgment as a matter of law. See **June Medical Services**, 302 So.3d at 1164. If Ms. Boudreaux failed to do so, there was no genuine issue of material fact and summary judgment was properly granted. See **McCoy**, 277 So.3d at 348.

As set forth above, in support of Progressive's motion for summary judgment, Progressive offered Ms. Boudreaux's responses to requests for admission, a certified copy of Progressive's policy issued to Ms. Coco, Ms. Boudreaux's petition, and the depositions of Ms. Boudreaux and Ms. Coco. Although there was no written document describing Ms. Coco and Ms. Boudreaux's working relationship, Ms. Boudreaux's responses to requests for admission, together with the deposition testimony, consistently described the details of their arrangement and the events surrounding the accident.

Ms. Boudreaux's responses to requests for admissions included the following admissions: that she was working with Ms. Coco on the date of the accident, that Ms. Coco paid her to install blinds and other window coverings on the date of the accident, and that she was "coming from one installation heading to another installation" at the time the accident occurred. Ms. Coco's and Ms. Boudreaux's deposition testimony further elaborated on these facts as summarized below.

Ms. Coco installs window treatments pursuant to a contract with Lowe's Home Improvement (Lowe's). Lowe's customers may pay a fee to Lowe's, which Lowe's then

8

remits to Ms. Coco, to have their homes measured for window treatments. After Ms. Coco completes the measurements, a Lowe's computer program generates a price quote based on the measurements and the window treatment chosen. If the customer chooses to go forward, Ms. Coco installs the window treatments and is paid a fee based on the particulars of each job. While Lowe's provides Ms. Coco with the window treatments and the details of the work to be done, Lowe's does not issue installation instructions, nor does Lowe's coordinate the timing of the installation. Ms. Coco provides her own tools such as a ladder, cordless drill, screwdriver, etc. Lowe's requires Ms. Coco to provide proof of insurance for the truck she uses when working on these jobs, as well as contractor's insurance, general liability insurance, and fire and auto insurance. While Ms. Coco works on an installation, Lowe's also requires Ms. Coco to wear a shirt that reads "Lowe's Independent Service Provider" and to put a sign in the yard that reads "Lowe's Installation in Progress."

Pertinent to this appeal, Ms. Coco could, at her discretion, engage an assistant for the installations. While Lowe's did not require Ms. Coco to give notice before she engaged an assistant, it did require any assistant to pass a criminal background check and to wear the same Lowe's shirt as Ms. Coco during installations. Ms. Coco worked with several such assistants off and on. She paid the costs associated with the criminal background check and the purchase of a Lowe's shirt for each assistant she worked with.

Prior to the accident from which this case arises, Ms. Coco sometimes asked her daughter, Ms. Boudreaux, to work with her as her assistant. On these occasions, Ms. Boudreaux was required to be present on the job site at the same time as her mother. Once at the job site, Ms. Boudreaux's tasks included opening the boxes of merchandise, placing the window treatments in front of the appropriate window according to a diagram provided by Lowe's, and placing the empty merchandise boxes for discard as directed by the customer. Ms. Boudreaux did not participate in the actual installation of the window treatments and did not provide any materials or tools other than her own utility knife, or "box cutter." Ms. Boudreaux and Ms. Coco both testified that this work required no specialized training, no supervision, and was temporary in nature. Ms. Boudreaux did not work on a regular weekly or monthly basis.

9

When Ms. Boudreaux was engaged by Ms. Coco to assist with a window treatment installation, she was paid the rate of $10 per hour. Payment began at the time Ms. Boudreaux arrived at the job site, or if Ms. Boudreaux rode with Ms. Coco, at the time Ms. Coco picked her up for the job, until the end of the last job of the day. When they worked on more than one job, Ms. Coco paid Ms. Boudreaux during travel time from one job site to the next. Ms. Boudreaux was paid the same rate regardless of the quality and efficiency of her work. Ms. Coco paid Ms. Boudreaux on Friday for any jobs completed during the week. Ms. Coco did not withhold any taxes, and Ms. Boudreaux received an IRS Form 1099 at the end of the year. Ms. Coco also testified that she did not complete 941 Employer's Quarterly Federal Tax forms in 2017, and she did not maintain workers' compensation insurance for any employee in 2017. Ms. Coco did not provide any employee benefits to Ms. Boudreaux, such as health insurance or retirement. Ms. Boudreaux did not file for unemployment benefits or workers' compensation benefits as a result of the accident. Ms. Boudreaux testified that she had no relationship with Lowe's and was paid only by Ms. Coco.

On the day of the accident in question, Ms. Boudreaux had agreed to assist Ms. Coco with four or five jobs. Ms. Coco picked Ms. Boudreaux up so that they could ride together to the job sites. They had completed two or three jobs in Brusly and were on their way to Central when the accident occurred. Ms. Coco and Ms. Boudreaux testified that while they were traveling between jobs in Brusly to the jobs in Central, Ms. Boudreaux was being paid $10 per hour. Ms. Boudreaux was in the front passenger seat at the time of the accident. After the accident, Ms. Boudreaux accompanied Ms. Coco to the remaining job sites, but did not assist her with the remaining jobs. Ms. Coco recalled paying Ms. Boudreaux for the remainder of the day, but Ms. Boudreaux did not recall being paid for the jobs she did not assist on. Ms. Boudreaux stated she would defer to Ms. Coco as to whether she was paid for the remainder of the jobs, as Ms. Coco would have record of that.

Based on the evidence submitted in support of and in opposition to the motion for summary judgment, we now analyze the details of their working arrangement using the factors prescribed in **Hillman v. Comm-Care, Inc.**, 2001-1140 (La. 1/15/02), 805 So.2d

10

1157, 1162, and **Hickman v. Southern Pacific Transport Company**, 262 La. 102, 262 So.2d 385, 390-91 (1972), to determine whether an employer-employee relationship existed between Ms. Coco and Ms. Boudreaux to determine whether an employer-employee relationship existed between Ms. Coco and Ms. Boudreaux. The first **Hillman** factor considers the power of selection and engagement, and the third considers the power of dismissal.[6] Notably, the right to terminate without cause, where no term of employment is prescribed, is characteristic of an employer-employee relationship. **Hulbert v. Democratic State Central Committee of Louisiana**, 2010-1910 (La.App. 1 Cir. 6/10/11), 68 So.3d 667, 672, writ denied, 2011-1520 (La. 10/7/11), 71 So.3d 316. Relevant to these issues, it is clear that Ms. Coco had the power to select her assistants and also the power to terminate those assistants without cause, as Ms. Coco specifically testified that she could choose not to engage a particular assistant for a subsequent job if she was dissatisfied with her prior work. Likewise, Ms. Boudreaux could accept or reject the job at her own discretion.

Regarding the second **Hillman** factor, payment of wages, Ms. Coco set the $10 hourly rate and paid Ms. Boudreaux the same rate regardless of the quality or efficiency of her work. With respect to the fourth **Hillman** factor, the power of control, Ms. Coco and Ms. Boudreaux both testified that Ms. Coco provided a diagram which directed Ms. Boudreaux as to where to place the window treatments, though they qualified these statements by noting that Ms. Coco did not supervise or direct Ms. Boudreaux as to how she opened the boxes of materials or moved them around.

We next consider the **Hickman** factors. Regarding the existence of a valid contract, there is no requirement that said agreement be in writing; instead, it is sufficient to present evidence that there was a meeting of the minds, and that a valid oral contract was confected. **O'Bannon v. Moriah Technologies, Inc.**, 2015-1460 (La.App. 1 Cir.

---

[6] We note Ms. Boudreaux's argument that the trial court incorrectly applied the test for distinguishing between an employee and an independent contractor employed in **Hickman**, instead of applying the more recent test set forth in **Hillman**. However, the Louisiana Supreme Court in **Bolden** recently discussed the issue and cited to both **Hickman** and **Hillman. Bolden**, --- So. 3d at ---, 2022 WL 262976, at *6. Accordingly, we find that this argument lacks merit.

6/3/16), 196 So.3d 127, 135. Here, Ms. Coco and Ms. Boudreaux gave harmonious descriptions of their working relationship and the obligations each owed the other.

The second and third **Hickman** factors are generally discussed together and refer to the methods used to complete the project, the non-exclusiveness of those methods, and the degree of control exercised by the principal. **Ellis**, --- So.3d at ---, 2021 WL 6329796, at *5. In other words, to determine whether someone is an independent contractor, one must look at his degree of control over the work. While the principal has the ability to oversee the results of the contractor's work, the principal in no way influences the manner in which the contractor does the work. Conversely, an employer has a great amount of control over an employee's work, such as the nature of the task and where it is to be performed. **Roca v. Security National Properties-Louisiana Limited Partnership**, 2011-1188 (La.App. 1 Cir. 2/10/12), 102 So.3d 778, 781, writ denied, 2013-0233 (La. 4/1/13), 110 So.3d 583. In this matter, as set forth above, Ms. Coco directed Ms. Boudreaux to the job site and provided a diagram for placement of materials, and Ms. Boudreaux placed the materials near the appropriate windows according to that diagram. Although both Ms. Coco and Ms. Boudreaux testified that Ms. Coco did not direct Ms. Boudreaux as to how to go about unpacking the materials and moving them to their ultimate destination, Ms. Boudreaux's task was ultimately subject to Ms. Coco's control by virtue of the diagram. The work did not involve specific piecework which Ms. Boudreaux was free to complete by her own methods, nor was Ms. Boudreaux given any choice as to the means by which she reached the result desired by Ms. Coco. Further, Ms. Boudreaux had no independent business relative to the installation of window treatments outside of the work she performed for Ms. Coco.

The fourth **Hickman** factor considers whether there was a specific price for the overall undertaking. In this matter, Ms. Boudreaux was paid an hourly rate while working at each jobsite, regardless of the quality and efficiency of her work, and while traveling from one job site to the next. Thus, Ms. Boudreaux's compensation was not tied to the overall undertaking.

The fifth **Hickman** factor considers whether the duration of the work was for a specific time and not subject to termination or discontinuance at the will of either side

without corresponding liability for breach. As explained in **Hickman**, the right to terminate the contract between the parties, without incurring liability for breach of contract, where no term of employment is prescribed, is characteristic of the employer-employee relationship. This right is at the same time antagonistic to the independent contractor relationship. **Hickman**, 262 So.2d at 391. Here, Ms. Coco and Ms. Boudreaux both testified that Ms. Coco offered work to Ms. Boudreaux on a job-by-job basis. Thus, there was no specific term of the duration of Ms. Boudreaux's employment. Further, Ms. Coco could cease offering Ms. Boudreaux work at any time, and Ms. Boudreaux could refuse work at any time, without incurring any liability for breach of contract.

Again, the most important inquiry to be made in determining the relationship between the parties is whether the principal reserved the right to control the work.[7] **Ellis**, --- So.3d at ---, 2021 WL 6329796 at *5. Having thoroughly reviewed the record in its entirety, we find that the evidence presented establishes that Ms. Boudreaux's work was not of an independent nature, but was subject to Ms. Coco's right to supervise and control the work done by Ms. Boudreaux. Ms. Boudreaux was engaged to open boxes of materials and place them near certain windows according to a specific diagram. Thus, Ms. Boudreaux was hired to complete a very specific task, and due to the specificity of the task itself, she had no discretion or control regarding how the work assigned to her was done. Thus, the uncontested facts establish that Ms. Boudreaux was Ms. Coco's employee.

Progressive's policy excludes coverage for bodily injury sustained by an employee of the insured, arising out of or within the course of the employee's employment. Here, Ms. Coco regularly paid Ms. Boudreaux an hourly rate for the time spent traveling to job sites, and Ms. Boudreaux was injured during such travel. Thus, the undisputed facts

---

[7] Ms. Coco testified that she considered her assistants contractors and not employees because they were neither full-time nor part-time, but rather, worked on a job-by-job basis, when they wanted to work. Ms. Boudreaux confirmed that Ms. Coco referred to her practice of working with assistants as "subcontract[ing] out part of the job," and testified that she had never identified Ms. Coco as her employer, because "[t]hat was just someone I did contract work for; she wasn't my employer." However, although Ms. Coco and Ms. Boudreaux may have considered Ms. Boudreaux to be an independent contractor rather an employee, this designation is not binding or controlling on the rights of third persons. The rights of third persons are controlled by the substance, rather than the title, of the contractual relationship between the parties. **Hughes v. Goodreau**, 2001-2107 (La.App. 1 Cir. 12/31/02), 836 So.2d 649, 659, writ denied, 2003-0232 (La. 4/21/03), 841 So.2d 793.

establish that Ms. Boudreaux's injuries unquestionably arose out of or within the course of her work.

Based on the evidence presented, Progressive made a *prima facie* showing that its motion should be granted. The burden then shifted to Ms. Boudreaux to produce factual support sufficient to establish the existence of a genuine issue of material fact or that Progressive is not entitled to judgment as a matter of law. As noted above, Ms. Boudreaux supported her opposition to Progressive's motion for summary judgment with the same evidence Progressive offered in support of its motion – Ms. Boudreaux's deposition and the deposition of Ms. Coco. These transcripts do not provide factual support sufficient to establish the existence of a genuine issue of material fact, or that Progressive is not entitled to judgment as a matter of law. To the contrary, they establish that there are no factual disputes remaining to be settled. When the undisputed facts are considered within the terms of the policy, it is clear that there is no reasonable interpretation of the policy under which coverage could be afforded. See **Kirby**, 208 So.3d at 937. Therefore, based on our *de novo* review, we find that Progressive is entitled to judgment as a matter of law. The employer's liability exclusion applies and operates to bar Ms. Boudreaux's claims against Progressive, and summary judgment on this basis was proper.

## CONCLUSION

For the foregoing reasons, we affirm the June 18, 2021 judgment of the trial court granting summary judgment in favor of Progressive Paloverde Insurance Company and dismissing Brady Boudreaux's claims. Costs of this appeal are assessed against Ms. Boudreaux.

**AFFIRMED.**